UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH R. BRANCIFORTE | : | NO.: 3:02CV928 (AVC) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF MIDDLETOWN, ET AL | : | JANUARY 13, 2005 |

## **MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(c), the defendants hereby move for summary judgment as to the plaintiff's Complaint dated May 31, 2002.

As is more particularly set forth in the attached supporting memorandum of law, the defendants are entitled to judgment as a matter of law for the following reasons:

1.      The plaintiff's claims of false arrest fail as a matter of law as the defendants had probable cause to effectuate the plaintiff's arrest;

2.      The plaintiff's claims of false arrest are barred by the doctrine of qualified immunity;

3.      The plaintiff's claims of false arrest are barred by the doctrine of governmental immunity;

4.      The plaintiff's claims of malicious prosecution fail as a matter of law;

5.      The plaintiff's claims of libel and defamation fail as a matter of law as the plaintiff is unable to sustain his burden of proof with regard to the same;

ORAL ARGUMENT IS REQUESTED

6.      The plaintiff's claims of negligent infliction of emotional distress are barred by the doctrine of governmental immunity;

7.      The plaintiff's claims of intentional infliction of emotional distress fail as a matter of law as the plaintiff is unable to sustain his burden of proof with regard to the same;

8.      The plaintiff's <u>Monell</u> claims against the City of Middletown fail as a matter of law;

9.      The plaintiff's claims of libel and defamation against the City of Middletown are barred by the doctrine of governmental immunity.

WHEREFORE, the defendants respectfully request that this Court grant their Motion for Summary Judgment.

                          DEFENDANTS,
                          TOWN OF MIDDLETOWN, DAVID
                          VISCONTI, in his official and individual
                          capacity, DEREK PUORRO, in his
                          individual capacity and MICHAEL
                          KERKES, in his individual capacity


                          By____/s/  Beatrice S. Jordan____
                            Beatrice S. Jordan
                            ct22001
                            Howd & Ludorf, LLC
                            65 Wethersfield Avenue
                            Hartford, CT  06114
                            (860) 249-1361
                            (860) 249-7665 (Fax)
                            E-Mail:  bjordan@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 13th day of January, 2005.

Rachel M. Baird, Esquire
Law Office of Rachel M. Baird
Stonegate Professional Building
379 Prospect Street
Torrington, CT  06790-5239

Trina Solecki, Esquire
City Attorney
City Hall
245 DeKoven Drive
P.O. Box 1300
Middletown, CT  06457


_____ /s/  Beatrice S. Jordan_ __
Beatrice S. Jordan

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH R. BRANCIFORTE | : | NO.: 3:02CV928 (AVC) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF MIDDLETOWN, ET AL | : | JANUARY 13, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND**

The plaintiff has brought this action by way of an eight count Complaint dated

May 31, 2002, for damages allegedly sustained as a result of his arrest on driving

under the influence charges during the early morning hours of March 1, 2001.

Specifically, on March 1, 2001, at approximately 1:21 a.m., the plaintiff's motor vehicle

was stopped by Officers Derek Puorro and Michael Kerkes after the plaintiff made an

improper turn.  The plaintiff was subsequently administered a field sobriety test, after

which he was ultimately arrested and charged with Illegal Operation of a Motor Vehicle

Under the Influence of Alcohol/Drugs in violation of Conn. Gen. Stat. §14-227a,

Operating a Motor Vehicle Without Minimum Insurance in violation of Conn. Gen. Stat.

§14-213, Improper Turn in violation of Conn. Gen. Stat. §14-242, and Improper

Rear/Marker Lamps in violation of Conn. Gen. Stat. §14-96c.

**A.     Claims Against the Individual Defendants**

Count One of the Complaint, directed to Sergeant David Visconti, Officer Derek Puorro and Officer Michael Kerkes, is a civil rights claim pursuant to 42 U.S.C. §1983. The plaintiff alleges that the defendants violated his constitutional rights in seizing, arresting and charging the plaintiff.  (See Complaint dated May 31, 2002, Count One, at ¶58.)  Specifically, the plaintiff alleges that Officer Derek Puorro violated his constitutional rights as follows:  (a) freedom from the unreasonable seizure of his person; (b) freedom from arrest and charge for an offense without probable cause; (c) freedom from false arrest where further investigation exonerates plaintiff from charge; and (d) freedom from malicious prosecution where further investigation exonerates plaintiff from charge.  (See Complaint, at ¶54.)

In addition, the plaintiff alleges that Officer Michael Kerkes violated his constitutional rights as follows:  (a) freedom from arrest and charge for an offense without probable cause; (b) freedom from false arrest where further investigation exonerates plaintiff from charge; and (c) freedom from malicious prosecution where further investigation exonerates plaintiff from charge.  (See Complaint, at ¶55.)

Finally, the plaintiff alleges that Sergeant David Visconti placed Officer Puorro under oath and notarized Officer Puorro's report regarding the incident and results of the chemical breath tests.  (See Complaint, at ¶40.)

Count Two of the Complaint alleges a false arrest claim against Officers Puorro and Kerkes.  Specifically, the plaintiff alleges that the defendants falsely charged the

plaintiff with driving under the influence of alcohol charges even after the plaintiff's breath test showed that the plaintiff was not under the influence of alcohol at the time of the test or prior thereto.  (See Complaint, Count Two, at ¶60.)

Count Three of the Complaint alleges a claim for malicious prosecution against Officers Puorro and Kerkes.  Specifically, the plaintiff alleges that Officer Puorro filed a false charge of driving under the influence of alcohol by stating that the plaintiff was driving erratically, emitted the odor of alcohol, and by stating that the plaintiff was intoxicated in having failed the field sobriety test notwithstanding the results of the chemical breath test.  (See Complaint, Count Three, at ¶¶64-65.)

Finally, Counts Four through Six of the Complaint allege state law claims of libel and defamation arising out of the publication of the charges against the plaintiff in the local newspaper, intentional infliction of emotional distress, and negligent infliction of emotional distress, respectively.

**B.     Claims Against The City of Middletown**

Count Seven of the Complaint is a civil rights claim brought pursuant to 42 U.S.C. §1983, directed to the City of Middletown.  Specifically, the plaintiff alleges that:

(1)     the City of Middletown developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Middletown, which caused the violation of the plaintiff's rights;

(2)     it was the policy and/or custom of the City of Middletown to inadequately supervise and train its police officers, including the defendant officers, thereby failing to prevent further constitutional violations on the part of its officers;

3

(3)     it was the policy and/or custom of the City of Middletown, and its supervisors, not to review driving under the influence of alcohol charges when the Chemical Breath Test results were contrary to an officer's observations;

(4)     it was the policy and/or custom of the City of Middletown, and its supervisors, to charge driving under the influence of alcohol where the results of the investigation warranted a lesser charge, a different charge, or no charge at all; and

(5)     the City of Middletown did not implement an appropriate standard of supervisory review of the standardized arrest reports and supplementary police narratives to ensure the appropriateness of driving under the influence of alcohol charges.

Finally, the Eighth Count of the Complaint alleges libel and defamation as to the City of Middletown.  Specifically, the plaintiff alleges that the City of Middletown is responsible for the filing of false charges, and the subsequent publication of the same by a local newspaper.  (See Complaint, Count Eight, ¶88.)

The defendants hereby incorporate by reference the Statement of Undisputed Facts contained in the attached Local Rule 56(a)1 Statement which provides a more detailed background of the incident.

The defendants now move for summary judgment as to the plaintiff's Complaint in its entirety for the reasons more fully set forth herein.

## II.     STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  A

factual dispute is "genuine" when the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

     A "material fact" is one whose resolution will affect the ultimate determination of

the case.  Id.  In determining whether a material issue of fact exists, the Court must

resolve all ambiguities and draw all inferences against the moving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc.

v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3rd Cir. 1990), cert. denied, 499 U.S.

921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However, "the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact."  Samuels v. Smith, 839 F. Supp. 959, 962 (D. Conn. 1993).

     The party opposing summary judgment "may not rest upon the mere allegations

or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at

2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir.

1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v.

Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once

the moving party has satisfied its burden of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the non-moving party is required to go

beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986).  "Neither courts nor defendants should be subjected to trials which can be little more than harassment."  Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  See Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803 through 805 of the Federal Rules of Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Servies, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

6

III.    **APPLYING THE SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY**

Qualified immunity shields police officers from suits for damages under 42 U.S.C. §1983, unless their actions violate clearly established rights of which an objectively reasonable official would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.  [It] is an immunity from suit rather than a mere defense to liability . . . "  Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citations omitted; internal quotation marks omitted).  The summary judgment standard to be applied in cases involving the affirmative defenses of qualified immunity was articulated in Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995), as follows:

> To establish qualified immunity, a defendant must demonstrate either that his conduct did not violate any of the plaintiff's . . . clearly established rights, . . . that would have been known to a reasonable person or that it was objectively reasonable for him to believe that his . . . actions did not violate any of those clearly established rights.

The availability of this defense does not depend on whether the plaintiff's rights were in fact violated.  Id.  "[L]aw enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be personally liable."  Id. at 423, citing, Anderson v. Creighton, 483 U.S. 635, 641 (1987).

7

A law enforcement officer seeking summary judgment on the ground of qualified immunity bears the burden of proving that it was "objectively reasonable" for him to believe that his behavior did not violate the plaintiff's clearly established constitutional rights.  This is the test to be used in the instant case, namely, whether it was "objectively reasonable" for the defendant officers to believe that they were not violating any of the plaintiffs' constitutional rights to be free from unreasonable or excessive force.  See Lennon v. Miller, 66 F.3d 422.

In the context of applying the defense of qualified immunity to allegations asserting a lack of probable cause, "the issue for immunity purposes is not probable cause in fact but *arguable probable cause*."  Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir.), cert. denied, 484 U.S. 828 (1987) (citations omitted; internal quotation marks omitted; emphasis added).  "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law."  Lee v. Sandberg, 136 F.3d 94 ¶36 (2d Cir. 1997) (citations omitted; internal quotation marks omitted).

## IV.    LAW AND ARGUMENT

### A.    THE PLAINTIFF'S CLAIMS OF FALSE ARREST FAIL AS A MATTER OF LAW

In the Counts One and Two of the Complaint, the plaintiff alleges that Officers Puorro and Kerkes had no warrant for the arrest of the plaintiff, no probable cause for

the arrest, and no legal cause or excuse to seize the plaintiff.  (See Complaint, at ¶51.)

Additionally, the plaintiff alleges that the defendants had no probable cause to charge

him with driving under the influence.  (See Id., at ¶52.)  Finally, the plaintiff alleges that

the defendants falsely arrested him on charges of driving under the influence even

after the plaintiff's chemical breath tests demonstrated that the plaintiff's blood alcohol

content was below the legal limit.  (See Id., Count Two, at ¶60.)

The plaintiff's claims of false arrest fail as a matter of law as the initial stop of

the plaintiff's vehicle was made upon probable cause, and the subsequent arrest of the

plaintiff on charges of driving under the influence were, likewise, made upon probable

cause.

      **1.**      **THE INITIAL STOP OF THE PLAINTIFF'S VEHICLE WAS PREMISED UPON SPECIFIC AND ARTICULABLE FACTS GIVING RISE TO PROBABLE CAUSE TO STOP THE VEHICLE**

Generally, an ordinary traffic stop must be justified by probable cause or a

reasonable suspicion supported by specific and articulable facts of unlawful conduct.

See U.S. v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994), citing Terry v. Ohio, 392 U.S. 1,

88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  In evaluating whether a reasonable suspicion

exists, the Court must look at the totality of the circumstances of each case to

determine whether an officer has a particularized and objective basis for suspecting

legal wrongdoing.  See Ritz v. Breen, 2002 WL 519095, *4 (D. Conn. March 11, 2002),

attached as **Exhibit D**.  While an officer may not rely upon a mere hunch to justify a

stop pursuant to Terry v. Ohio, supra, "the likelihood of criminal activity need not rise to

9

the level required for probable cause and falls considerably short of satisfying a preponderance of the evidence standard." Id.  The observance of a traffic violation, regardless of how minor the infraction may be, creates a specific and articulable fact sufficient to give rise to probable cause to stop the driver of the motor vehicle.  See U.S. v. Scopo, 19 F.3d at 781-82.

In the instant matter, the defendants observed the plaintiff making an improper right turn in failing to engage his turn signal.  (See Middletown Police Department Supplementary Incident Report (hereinafter referred to as "Supplementary Report"), attached hereto as **Exhibit A**.)  Pursuant to Conn. Gen. Stat. §14-242, no person shall turn any vehicle without giving an appropriate signal of their intention to turn right or left.  See Conn. Gen. Stat. §14-242(a).  The plaintiff does not dispute that he did, in fact, proceed to take a right-hand turn without engaging his right turn signal.  (See Deposition Transcript of Joseph Branciforte dated November 12, 2004, attached hereto as **Exhibit B**, at pp.25, 27.)  The plaintiff further does not dispute that he was aware that a police vehicle was parked near the intersection at which he took the right-hand turn without engaging his turn signal at the time that he did so.  (See Branciforte Deposition, **Exhibit B**, at pp.26-27.)  Thus, based on the foregoing, the defendants' stop of the plaintiff's vehicle was based upon a specific and articulable fact, namely the observance of a traffic violation.  The defendants' initial stop of the plaintiff's vehicle was, therefore, based upon probable cause.  See U.S. v. Scopo, 19 F.3d at 782.

**2.    THE PLAINTIFF'S SUBSEQUENT ARREST FOR DRIVING UNDER THE
INFLUENCE WAS PREMISED UPON PROBABLE CAUSE**

A claim for false arrest may not lie where the arresting officers have probable cause to effectuate the arrest.  Probable cause to effectuate an arrest exists where the officers "have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.  See Boyd v. New York, 336 F.3d 72, 75-76 (2d Cir. 2003).

In the instant matter, the plaintiff alleges that Officers Puorro and Kerkes lacked probable cause to arrest and charge him with driving under the influence.  (See Complaint, at ¶¶51-52.)  Connecticut General Statutes §14-227a governs the operation of a motor vehicle while under the influence of alcohol or drugs or while having an elevated blood alcohol content, and provides as follows:

> (a)    **Operation while under the influence or while having an
> elevated blood alcohol content.**  No person shall operate a motor
> vehicle while under the influence of intoxicating liquor or any drug or
> both.  A person commits the offence of operating a motor vehicle while
> under the influence of intoxicating liquor or any drug or both if such
> person operates a motor vehicle on a public highway of this state or on
> any road . . . (1) while under the influence of intoxicating liquor or any
> drug or both, or (2) while such person has an elevated blood alcohol
> content.

Conn. Gen Stat. §14-227a(a) (emphasis in original).

Subsequent to the initial, lawful stop of the plaintiff's vehicle, Officer Puorro approached and spoke with the plaintiff, at which time he observed that the plaintiff emitted an odor of an alcoholic beverage from his breath, the plaintiff's eyes appeared

11

glassy and bloodshot, his speech was slurred, and his movements were slow and uncoordinated.  (See Supplementary Report, **Exhibit A**.)  Officer Puorro inquired of the plaintiff what he had been doing that evening, at which time the plaintiff advised him that he had been to a couple of bars and had a couple of beers.  (See Branciforte Deposition, **Exhibit B**, at p.40.)  In fact, the plaintiff admittedly had been out drinking prior to being stopped by the defendants.  Specifically, the plaintiff had consumed at least three beers while at the Ultimate Café, an additional two beers while at Franco's Restaurant & Bar, and one beer while at Chap's.  (See Branciforte Deposition, **Exhibit B**, at pp.17-23.)

Moreover, it is undisputed that the plaintiff failed several of the field sobriety tests he was asked to perform.  Specifically, the plaintiff failed the split alphabet test, and is unable to offer any evidence to the contrary as he does not recall his performance or the results of said test.  (See Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**; Branciforte Deposition, **Exhibit B**, at p.49.)  Likewise, the plaintiff failed the Horizontal Gaze Nystagmus test as a result of demonstrating a lack of smooth pursuit in each eye.  (See Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**.)  The plaintiff concedes that he had difficulty performing the Horizontal Gaze Nystagmus test due to a bruised eye, but cannot offer any explanation as to why he failed the test with the non-injured eye.  (See Branciforte Deposition, **Exhibit B**, at p.45.)  In addition, the plaintiff failed the walk and turn test, conceding that he lost his balance and stepped off the line during the test.  (See

Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**; Branciforte

Deposition, **Exhibit B**, at pp.50-51.)  Finally, the plaintiff failed the one-leg stand test,

conceding that he could not keep his leg up for the time required.  (<u>See</u>

Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**; <u>See</u> Branciforte

Deposition, **Exhibit B**, at p.48.)

      Based on the foregoing, the defendants had before them reasonably

trustworthy information sufficient to warrant a person of reasonable caution that an

offense had been committed by the plaintiff, namely operation of a motor vehicle while

under the influence of alcohol or drugs or both in violation of Conn. Gen. Stat. §14-

227a.  <u>See</u> <u>e.g.</u> <u>Clynch v. Chapman</u>, 285 F.Supp.2d213, 226 (D. Conn. 2003) (holding

that no reasonable jury could find a lack of probable cause where it was undisputed

that the plaintiff demonstrated an inability to perform the field sobriety tests, smelled of

alcohol, slurred his speech, and admitted to having recently consumed alcohol); <u>Colon</u>

<u>v. Tucciarone</u>, 2003 WL 22455005, *2 (D.Conn. 2003) (attached as **Exhibit E**)

(holding that probable cause existed to arrest the plaintiff for operation of a vehicle in

violation of §14-227a where plaintiff admitted to drinking, smelled of alcohol, had

glassy eyes, slurred speech and failed a field sobriety test); <u>Ritz v. Breen</u> 2002 WL

519095, *5 (D. Conn. 2002) (attached as **Exhibit D**) (holding that probable cause to

arrest the plaintiff for a violation of §14-227a existed where the plaintiff admittedly took

a wide turn, was unsteady on her feet, and performed poorly on the field sobriety test);

<u>Newby v. Cromwell</u>, 25 F.Supp.2d 56, 58 (D. Conn. 1998) (holding that probable

13

cause to arrest the plaintiff for violation of §14-227a existed where the plaintiff smelled of alcohol, eyes were glassy and red, admitted to having consumed alcohol that evening, and failed a field sobriety test).

Notwithstanding the above, the plaintiff alleges that the defendants falsely arrested him on charges of driving under the influence after the plaintiff's chemical breath tests demonstrated that the plaintiff's blood alcohol content was below the legal limit.  (See Id., Count Two, at ¶60.)  Specifically, after being arrested and taken into custody for driving under the influence in violation of Conn. Gen. Stat. §14-227a, the plaintiff was transported to the Middletown Police Department for processing.  (See Supplementary Report, **Exhibit A**; Complaint dated May 31, 2002, at ¶28; Branciforte Deposition, **Exhibit B**, at p.53.)  Thereafter, the plaintiff voluntarily submitted to a chemical analysis of his breath.  Two breath tests were administered, the first of which showed an elevated BAC of .019, and the second of which showed an elevated BAC of .012.  (See Supplementary Report, **Exhibit A**.)  The plaintiff apparently argues that, based upon the results of the above breath tests, the defendants no longer had probable cause to maintain his arrest or the charges of driving under the influence in violation of Conn. Gen. Stat. §14-227a.

The plaintiff's argument fails for several reasons.  First, as a preliminary matter, once an arrest is made pursuant to Conn. Gen. Stat. §14-227a, the charge may not be reduced or dismissed by the arresting officers.  Specifically, the statute provides as follows:

14

> If a person is charged with a violation of the provisions of subsection (a) of this section, the charge may not be reduced, nolled or dismissed unless the prosecuting authority states in open court such prosecutor's reasons for the reduction, nolle or dismissal.

See Conn. Gen. Stat. §14-227a(f).

Secondly, the plaintiff's claim that he was falsely arrested based upon the results of his breath tests fails to recognized the two manners in which one may be charged with driving under the influence pursuant to Conn. Gen. Stat. §14-227a. In Clynch v. Chapman, 285 F.Supp.2d 213 (D. Conn. 2003), the Court addressed this very issue. In Clynch, the plaintiff was arrested for driving under the influence in violation of Conn. Gen. Stat. §14-227a. The plaintiff was subsequently administered two breath tests which each demonstrated that his blood alcohol content was below the legal limit. See Id., at 226. The plaintiff alleged that the results of the breath tests demonstrated his innocence of the charges, and therefore, any probable cause to arrest him on said charges no longer existed. See Id. In concluding that the plaintiff's argument was faulty, the Court reasoned as follows:

> Plaintiff's argument fails to differentiate between a violation of 14-227a(a)(1) and 14-227a(a)(2). Under subdivision (2), a BAC rating in excess of .1 automatically qualifies as "operation [of a motor vehicle] while having an elevated blood alcohol content." Under 14-227a(a)(1) . . . . which is considered the "behavioral . . . .subdivision of [§14-227a(a)], . . . . no evidence of blood alcohol content is necessary to support a conviction . . . . Thus, a DUI conviction may be predicated on a driver's behavior even if the driver's BAC rating falls below ten-hundredths of one per cent. The statutory scheme bolsters this interpretation. The use of the disjunctive "or" between the two clearly indicates two separate offenses, the later of which, subdivision (2), required a defined "elevated blood alcohol content."

<u>Clynch</u>, 285 F.Supp.2d at 226-27.

Accordingly, the Court held that, while Clynch's breath test results would have precluded a reasonable person from believing that probable cause existed to charge him with a violation of Conn. Gen. Stat. §14-227a(a)(2), the plaintiff's post-stop behavior and elevated BAC levels was sufficient to establish probable cause to arrest him under §14-227a(a)(1).  <u>See</u> <u>Id</u>., at 227; <u>see</u> <u>also</u>, <u>Colon</u>, **Exhibit E** (holding that probable cause to arrest existed despite the fact that the plaintiff passed two breath tests); <u>Newby</u>, <u>supra</u> (holding that probable cause to arrest existed despite the fact that the plaintiff passed two breath tests).

As the foregoing demonstrates, the defendants had probable cause to arrest and charge the plaintiff with driving under the influence in violation of Conn. Gen. Stat. §14-227a based upon their observations of the plaintiff, the plaintiff's admissions as to having consumed alcohol that evening and the plaintiff's poor performance on several of the field sobriety tests.  The fact that the plaintiff subsequently passed two breath tests does not eliminate the existence of initial probable cause to arrest and charge him. The defendants are, therefore, entitled to judgment as a matter of law as to Counts One and Two of the Complaint.

**B.    <u>THE PLAINTIFF'S CLAIMS OF FALSE ARREST ARE BARRED UNDER THE DOCTRINE OF QUALIFIED IMMUNITY</u>**

In Counts One and Two of his Complaint, the plaintiff alleges a cause of action pursuant to 42 U.S.C. §1983 for a violation of his constitutional rights under the Fourth

and Fourteenth Amendments to be free from unlawful arrest, false arrest and arrest without probable cause.  (See Complaint, Count Two, ¶¶53-55).  The right to be free from false arrest is derived from the Fourth Amendment.  See Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002) (holding that "§1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures.").  However, a cause of action for false arrest does not arise under the Fourteenth Amendment to the U.S. Constitution.  See Albright v. Oliver, 510 U.S. 266 (1994) (holding that false arrest claims under §1983 are to be evaluated under the Fourth Amendment and not under the Fourteenth Amendment substantive due process provision).  Accordingly, the defendants treat the plaintiff's false arrest and warrantless arrest claims as pursuant to the Fourth Amendment to the U.S. Constitution and 42 U.S.C. §1983.

Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws.  See 42 U.S.C. §1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).  Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights which are guaranteed elsewhere.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999).  In order to succeed on a §1983 claim, the plaintiff must establish that the defendant had the requisite state of mind for the underlying violation.  Board of

17

County Comm'rs of Bryan County, Okla v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The federal doctrine of qualified immunity will protect police officers against §1983 suits unless their actions violate clearly established constitutional or statutory rights, and a reasonable officer would have known that the challenged conduct violated that established right.  See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Thomas v. Roach, 165 F.3d 137, 142 (2nd Cir. 1999). The test to be applied in the instant case is whether it was "objectively reasonable" for Officers Puorro and Kerkes to believe that they were not violating any of the plaintiff's constitutional rights to be free from arrest absent probable cause or a warrant.  See Lennon, 66 F.3d at 422.

An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Lennon v. Miller, supra at 423, quoting Golino v. City of New Haven, 950 F.2d 864, 870 (1991), cert. denied, 505 U.S. 1221, 112 S.Ct. 3032 (1992).  Additionally, an arrest without a warrant is deemed valid if it is supported by probable cause.  See Wong Sun v. United States, 371 U.S. 471, 479 (1963).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Id.,

18

citing Dunaway v. New York, 442 U.S. 200, 208 n.9, 99 S.Ct. 2248, 2254 n.9 (1979) (internal quotes omitted).  For qualified immunity purposes, the issue is not whether probable cause in fact exists but whether "arguable" probable cause exists.  See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) citing, Myers v. Morris, 810 F.2d 1437, 1455 (8th Cir. 1987).  Arguable probable cause exists when a reasonable police officer in the same circumstances, and possessing the same knowledge as the officer in question, could have reasonably believed that probable cause existed in the light of well established law.  See Id.

In the instant matter it was objectively reasonable for the defendants to believe that probable cause existed for plaintiff's arrest.  The undisputed facts relevant to the determination of the objective reasonableness of the defendants' belief that they were not violating any of the plaintiff's constitutional rights to be free from unlawful arrest, false arrest and arrest absent probable cause are as follows:

1.    On March 1, 2001, at approximately 1:21 a.m., Officer Derek Puorro and Officer Michael Kerkes were monitoring traffic on Main Street in the area of Liberty Street, in Middletown, Connecticut. (See Middletown Police Department Supplementary Incident Report (hereinafter referred to as "Supplementary Report"), attached hereto as **Exhibit A**.)

2.    At said date and time, Officers Puorro and Kerkes observed the plaintiff, Joseph Branciforte, traveling southbound on Main Street and turn right onto Liberty Street without engaging his turn signal. (See Supplementary Report, **Exhibit A**.)

3.    The plaintiff did, in fact, proceed to take a right-hand turn without engaging his right turn signal.  (See Deposition Transcript of

Joseph Branciforte dated November 12, 2004, attached hereto as **Exhibit B**, at pp.25, 27.)

4.      The plaintiff was aware that a police vehicle was parked near the intersection at which he took the right-hand turn without engaging his turn signal at the time that he did so.   (See Branciforte Deposition, **Exhibit B**, at pp.26-27.)

5.      Officers Puorro and Kerkes followed the plaintiff, ultimately stopping his vehicle in the area of 79 Prospect Street.   (See Supplementary Report, **Exhibit A**.)

6.      The plaintiff was aware that the police began to follow his vehicle after taking his turn, at which time both he and his passenger, Pamela Warzecha, became nervous.   (See Branciforte Deposition, **Exhibit B**, at pp.28-30.)

7.      The plaintiff's passenger then advised the plaintiff to take various random turns in an attempt to lose the police, which the plaintiff complied with.   (See Branciforte Deposition, **Exhibit B**, at pp.30-31.)

8.      Officer Puorro approached the vehicle and spoke with the plaintiff at which time he observed that the plaintiff emitted an odor of an alcoholic beverage from his breath, the plaintiff's eyes appeared glassy and bloodshot, his speech was slurred, and his movements were slow and uncoordinated.   (See Supplementary Report, **Exhibit A**.)

9.      Upon approaching the vehicle, Officer Puorro asked the plaintiff whether he was aware that he took a turn without engaging his turn signal to which the plaintiff responded in the affirmative.   (See Branciforte Deposition, **Exhibit B**, at pp.32-34.)

10.     Officer Puorro further inquired of the plaintiff what he had been doing that evening, at which time the plaintiff advised him that he had been to a couple of bars and had a couple of beers.   (See Branciforte Deposition, **Exhibit B**, at p.40.)

11.     The plaintiff had been out drinking prior to being stopped by the defendants.  Specifically, the plaintiff had consumed at least three

beers while at the Ultimate Café, an additional two beers while at Franco's Restaurant & Bar, and one beer while at Chap's.  (<u>See</u> Branciforte Deposition, **Exhibit B**, at pp.17-23.)

12.     The plaintiff was ultimately asked to submit to a field sobriety test, which he voluntarily agreed to perform.  (<u>See</u> Supplementary Report, **Exhibit A**.)

13.     The plaintiff was asked to complete a reverse counting test, which he successfully completed.  (<u>See</u> Supplementary Report, **Exhibit A**; Officer's DUI Arrest and Alcohol Test Report (hereinafter referred to as "Alcohol Test Report"), attached as **Exhibit C**.)

14.     The plaintiff does not recall what his performance or the results of the reverse counting test were.  (<u>See</u> Branciforte Deposition, **Exhibit B**, at p.49.)

15.     The plaintiff was next asked to perform the split alphabet test by reciting the alphabet beginning with the letter D and ending with the letter O, which he failed as a result of starting with the letter D and continuing through the letter Z.  (<u>See</u> Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**.)

16.     The plaintiff does not recall what his performance or the results of the split alphabet test were.  (<u>See</u> Branciforte Deposition, **Exhibit B**, at p.49.)

17.     The plaintiff was next asked to perform the Horizontal Gaze Nystagmus test, which he failed as a result of demonstrating a lack of smooth pursuit in each eye.  (<u>See</u> Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**.)

18.     The plaintiff recalls that he had difficulty performing the Horizontal Gaze Nystagmus test due to a bruised eye.  (<u>See</u> Branciforte Deposition, **Exhibit B**, at p.45.)

19.     The plaintiff was next asked to perform the walk and turn test, which he failed as a result of losing his balance during the instructional phase of the test, started too soon, raised his arms, did not walk heel-to-toe, took an incorrect number of steps, repeatedly stepped off the line, stooped to steady himself, and

turned incorrectly.   (See Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**.)

20.    The plaintiff recalls that he did not pass the walk and turn test as he lost his balance and stepped off the line.   (See Branciforte Deposition, **Exhibit B**, at pp.50-51.)

21.    The plaintiff was next asked to perform the one-leg stand test, which he failed as a result of swaying while balancing, raised his arms while struggling to maintain his balance, bent his knees, and put his foot down at the count of 2, 3, and 4, at which time the test was terminated.   (See Supplementary Report, **Exhibit A**; Alcohol Test Report, **Exhibit C**.)

22.    The plaintiff recalls that he failed the one-leg stand test as he could not keep his leg up for the time required.   (See Branciforte Deposition, **Exhibit B**, at p.48.)

23.    The plaintiff was then arrested and taken into custody for driving under the influence in violation of Conn. Gen. Stat. §14-227a, and transported to the Middletown Police Department for processing. (See Supplementary Report, **Exhibit A**; Complaint dated May 31, 2002, at ¶ 28; Branciforte Deposition, **Exhibit B**, at p.53.)

In the instant matter, the plaintiff was charged with a violation of Conn. Gen.

Stat. §14-227a which governs the operation of a motor vehicle while under the

influence of alcohol or drugs or while having an elevated blood alcohol content.

Specifically, the statute provides as follows:

(a)    **Operation while under the influence or while having an elevated blood alcohol content.**   No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both.   A person commits the offence of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state or on any road . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content.

22

Conn. Gen Stat. §14-227a(a) (emphasis in original).

Based on the foregoing, it was objectively reasonable for the defendants to believe that they were not violating the plaintiff's constitutional rights in arresting him for driving under the influence charges. The plaintiff concedes that he made an improper turn in failing to engage his turn signal thus giving rise to probable cause to stop his motor vehicle for the traffic violation alone. The plaintiff further concedes that he advised the defendants that he had been out at a few bars that evening and had a few beers. Moreover, the plaintiff concedes that he failed several of the field sobriety tests he was asked to perform. Given the above circumstances, a reasonable officer could believe that probable cause existed to arrest the plaintiff for operating his motor vehicle under the influence of alcohol or drugs in violation of Conn. Gen. Stat. §14-227a.

The defendants' conduct is protected pursuant to the doctrine of qualified immunity as their actions were objectively reasonable under the circumstances presented. The defendants are, therefore, entitled to judgment as a matter of law as to Counts One and Two of the Complaint.

### C.  THE PLAINTIFF'S CLAIMS OF FALSE ARREST ARE BARRED UNDER THE DOCTRINE OF GOVERNMENTAL IMMUNITY

Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Elliot v. City of Waterbury, 245 Conn. 385, 411 (1998). Governmental acts are performed

23

wholly for the direct benefit of the public and are supervisory or discretionary in nature. See Heigl v. Bd. of Ed., 218 Conn. 1, 5 (1991).  In contrast, "[m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."  Mulligan v. Rioux, 229 Conn. 716, 727 (1994) (Citations omitted; internal quotations omitted).  Municipal employees are entitled to governmental immunity for acts which require the sound exercise of discretion.  Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180-181 (1988).  "The hallmark of a discretionary act is that it requires the exercise of judgment."  Lombardi v. Edward J. Peters., P.C., 252 Conn. 623, 628 (2000).

The determination of whether an act is discretionary or ministerial can be decided as a matter of law where it is apparent from the allegations in the complaint. See Evon v. Andrews, 211 Conn. 501, 505-507 (1989); Lombardi v. Edward J. Peters., P.C., supra, 252 Conn. 628.

Policing the community and investigating those who break the law is a governmental function which requires the exercise of discretion.  See Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181.  Similarly, several Connecticut superior court cases have held that the process by which a police officer decides to make an arrest or conduct an investigation involves discretionary actions. See Lipka v. Madoule, 2001 WL 1712685 (Conn. Super., Dec. 17, 2001) (attached as **Exhibit F**); Mikita v. Barre, 2001 WL 651161 (Conn. Super., May 22, 2001) (attached as **Exhibit G**); Anderson v. City of New London, 1999 WL 162791 (Conn. Super.,

24

March 4, 1999) (copy attached as **Exhibit H**); <u>Castorina v. Stewart</u>, 1998 WL 309393

(Conn. Super., June 3, 1998) (copy attached as **Exhibit I**); <u>Elinsky v. Marlene</u>, 1997

WL 729102 (Conn. Super., November 14, 1997) (copy attached as **Exhibit J**).

At all times mentioned in the Complaint, the defendants were acting within the

scope of their employment and performing their duties as members of the Middletown

Police Department.  (<u>See</u> Complaint, Count One, ¶¶12-14).  In this case, the plaintiff's

claims arise directly from the alleged actions and inactions of members of the

Middletown Police Department.  The stop and administration of the field sobriety tests,

and subsequent arrest of the plaintiff, is the very type of discretionary governmental

activity to which the doctrine of governmental immunity applies.  <u>See</u> <u>e.g.</u>, <u>Gordon v.</u>

<u>Bridgeport Housing Authority</u>, <u>supra</u>, 208 Conn. 180-181.

As the Connecticut Supreme Court has noted, "we do not think that the public

interest is served by allowing a jury of laymen with the benefit of 20/20 hindsight to

second-guess the exercise of a policeman's discretionary professional duty.  Such

discretion is no discretion at all."  <u>Shore v. Stonington</u>, 197 Conn. 147, 157 (1982).

The actions of the defendants are, therefore, protected pursuant to the doctrine of

governmental immunity.  Accordingly, summary judgment should enter on behalf of the

defendants.

### D.   THE PLAINTIFF'S CLAIMS OF MALICIOUS PROSECUTION FAIL AS A MATTER OF LAW

"In order to prevail on a §1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 286 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  In Connecticut, an "action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully.  The plaintiff must allege and prove that the original action … was instituted without probable cause, with malice, and that it terminated in his favor." QSP Inc. v. The Aetna Casualty & Surety Co., 256 Conn. 343, n.16 (2001) (emphasis added.), quoting, Schaefer v. O.K. Tool Co., Inc., 110 Conn. 528, 532 (1930).

The plaintiff's claim of malicious prosecution fails as a matter of law as probable cause existed for his arrest.  As is more particularly set forth above, it was objectively reasonable for the defendant officers to believe that probable cause existed for the plaintiff's arrest based upon their personal observations of the plaintiff, the plaintiff's admissions of drinking that evening and the plaintiff's poor performance on the field sobriety tests.  If the Court determines that probable cause existed for the arrest of the plaintiff in this matter, then the plaintiff's claim for malicious prosecution must fail as a matter of law.

**E.** **THE PLAINTIFF'S CLAIMS OF MALICIOUS PROSECUTION AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE DOCTRINE OF GOVERNMENTAL IMMUNITY**

The plaintiff's claims of malicious prosecution and negligent infliction of emotional distress as set forth in Counts Three and Six of the Complaint are barred by the doctrine of governmental immunity. As previously indicated, policing the community and investigating those who break the law is a governmental function which requires the exercise of discretion. See Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181. Similarly, several Connecticut superior court cases have held that the process by which a police officer decides to make an arrest or conduct an investigation involves discretionary actions. See Lipka v. Madoule, 2001 WL 1712685 (Conn. Super., Dec. 17, 2001) (attached as **Exhibit F**); Mikita v. Barre, 2001 WL 651161 (Conn. Super., May 22, 2001) (attached as **Exhibit G**); Anderson v. City of New London, 1999 WL 162791 (Conn. Super., March 4, 1999) (copy attached as **Exhibit H**); Castorina v. Stewart, 1998 WL 309393 (Conn. Super., June 3, 1998) (copy attached as **Exhibit I**); Elinsky v. Marlene, 1997 WL 729102 (Conn. Super., November 14, 1997) (copy attached as **Exhibit J**).

The stop and administration of the field sobriety tests, and subsequent arrest of the plaintiff, is the very type of discretionary governmental activity to which the doctrine of governmental immunity applies. See e.g., Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181. The actions of the defendants are, therefore, protected

pursuant to the doctrine of governmental immunity.  Accordingly, summary judgment
should enter on behalf of the defendants as to Counts Three and Six of the Complaint.

**F.     THE PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS FAIL AS A MATTER OF LAW**

The plaintiff alleges intentional infliction of emotional distress against the
defendant officers in Count Five of the Complaint.  (See Complaint, Count Five, ¶¶74-
76.)  The plaintiff has failed to offer any specific factual allegations to support a claim
that either Officer Pourro or Officer Kerkes acted intentionally to inflict emotional
distress, and absent any such showing, this claim must also fail.

In order to prevail on a cause of action for intentional infliction of emotional
distress, the plaintiff must establish four elements:  "(1) that the actor intended to inflict
emotional distress; or that he knew or should have known that the emotional distress
was a likely result of his conduct; (2) that the conduct was extreme and outrageous;
(3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that
the emotional distress sustained by the plaintiff was severe."  Petyan v. Ellis, 200
Conn. 243, 253 (1986).  "Liability has been found only where the conduct has been so
outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly intolerable in a
civilized society."  Whelan v. Whelan, 41 Conn. Supp. 519, 523 (1991), quoting, 1
Restatement (Second) of Torts §46, p. 73, comment (d).

The conduct must be "especially calculated to cause, and does cause, mental distress of a very serious kind." DeLaurentis v. New Haven, 220 Conn. 225, 266 (1991); W. Prosser and W. Keeton, Torts, §12, p. 64 (5th Ed. 1984).  Whether the defendants' actions rise to the level of extreme and outrageous conduct is a question of law for the Court, and only where reasonable minds can differ does it become a matter for the jury.  See Mellaly v. Eastman Kodak Company, 42 Conn. Supp. 17, 18 (1991).

To be considered "extreme and outrageous," the conduct in question must be atrocious, utterly intolerable, and go beyond all possible bounds of human decency. See Whelan v. Whelan, 41 Conn. Supp. 523.  For example, extreme and outrageous conduct was found to exist in the following cases:  Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 20-21 (taunting and harassing plaintiff about his alcoholism despite knowledge that he was a recovering alcoholic); Whelan v. Whelan, 41 Conn. Supp. 519 (false statement to one's spouse that one has AIDS); Talit v. Peterson, 44 Conn. Supp. 490 (1997) (termination of employment in retaliation for filing grievance).

In the instant matter, the conduct of Officers Puorro and Kerkes clearly do not rise to the level of conduct which any reasonable person could find "extreme and outrageous."  As indicated above, it was objectively reasonable for Officers Puorro and Kerkes to believe that probable cause existed to arrest the plaintiff on charges of driving under the influence based upon their personal observations at the scene, as well as the plaintiff's performance during the field sobriety test.  In fact, the plaintiff

concedes that he advised the officers that he had been out at the bars that evening and had several beers.  In addition, the plaintiff concedes that he failed several of the field sobriety tests performed.  The plaintiff cannot, and has not, proffered any evidence tending to establish that the defendants acted with an intent to cause him emotional distress other than his belief that such is the case based solely upon the fact that he was arrested.  The plaintiff is, therefore, unable to sustain his burden of proof that the defendant officers' conduct was extreme and outrageous, or that they acted with the intent to cause him emotional distress.  Accordingly, the defendants are entitled to judgment as a matter of law as to Count Five of the Complaint alleging the intentional infliction of emotional distress.

### G.    THE PLAINTIFF'S CLAIM OF LIBEL AND DEFAMATION AGAINST THE INDIVIDUAL DEFENDANTS FAIL AS A MATTER OF LAW

In Count Four of his Complaint, the plaintiff alleges a cause of action sounding in libel and defamation arising out of his arrest.  Specifically, the plaintiff alleges that Officers Puorro and Kerkes falsely charged the plaintiff with driving under the influence while knowing that the charge would be subject to publication.  (See Complaint, Count Four, ¶69.)  The plaintiff further alleges that Sergeant Visconti failed to intervene and correct the allegedly false charge knowing that it would be subject to publication.  (See Id., at ¶70.)  Finally, the plaintiff alleges that he suffered damages as a result of the publication.  (See Id., at ¶71.)

Defamation has been defined as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Levesque v. Vernon, 341 F.Supp.2d 126, 140 (D. Conn. 2004). Defamation consists of the twin torts of libel, a written communication of the defamatory statement, and slander, an oral communication of the defamatory statement. See Prosser and Keeton, THE LAW OF TORTS, §111, p. 771 (5th ed. 1984 & Supp. 1988); see also, Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 611-12, 116 A.2d 440 (1955).

In order to establish a prima facie case of defamation, a plaintiff must demonstrate that:  "(1) the statement at issue was defamatory; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published; and (4) the plaintiff's reputation suffered injury as a result of the statement." Levesque, supra, 341 F.Supp.2d at 140.  Furthermore, in order for a claim of defamation to be actionable, the alleged defamatory statement must be false.  See Id.

The plaintiff is unable to establish a prima facie case of defamation in the instant matter.  First, the plaintiff cannot satisfy his burden of proof with regard to the first element of a cause of action in defamation, namely that the alleged defamatory statement was false.  As indicated above, probable cause existed as a matter of law to arrest the plaintiff on charges of driving under the influence in violation of Conn. Gen. Stat. §14-227a based upon the defendants' observations of the plaintiff, the plaintiff's admissions of having consumed alcohol that evening and the plaintiff's performance

31

on the field sobriety tests regardless of the results of the subsequent chemical breath tests.  See e.g. Clynch, supra, 285 F.Supp.2d at 226; Colon, supra, **Exhibit E**; Ritz, supra, **Exhibit D**; Newby, supra, 25 F.Supp.2d at 58.  Thus, the plaintiff cannot establish that the charges filed against him were false.

Additionally, it is undisputed that the charges against the plaintiff are a matter of public record.  As such, the charges against the plaintiff are subject to disclosure under Connecticut's Freedom of Information Act.  See Conn. Gen. Stat. §1-210.

Finally, the plaintiff is unable to establish the final element of his defamation claim, namely that his reputation suffered injury as a result of the statement.  The plaintiff concedes that the sole basis of his defamation and libel claim is the fact that the charges against him were made public and published in the local newspaper. (See Branciforte Deposition, **Exhibit B**, at pp.59-60.)  The plaintiff further concedes that he cannot identify any specific manner in which the charges against him have affected his reputation or business.  (See Branciforte Deposition, **Exhibit B**, at p.69.) Rather, the plaintiff merely speculates that the charges against him *could have* affected his business beyond the twenty-four hour period following his arrest, although he cannot identify any customers or contracts he lost because of the arrest and charges against him.  (See Branciforte Deposition, **Exhibit B**, at pp.69-70.)  The plaintiff, by his own testimony, is thus unable to establish any injury to his reputation as a result of the charges filed against him and their subsequent publication in the local newspaper.

Accordingly, the defendants are entitled to judgment as a matter of law as to the plaintiff's claims of libel and defamation.

**H.     THE PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST THE CITY OF MIDDLETOWN UPON WHICH RELIEF MAY BE GRANTED**

In Count Seven of the Complaint, the plaintiff alleges a civil rights claim brought pursuant to 42 U.S.C. §1983, directed to the City of Middletown.  Specifically, the plaintiff alleges that the City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Middletown, which caused the violation of the plaintiff's rights; failed to adequately supervise and train its police officers; failed to properly review driving under the influence of alcohol charges when the chemical breath test results were contrary to an officer's observations; had a policy and custom to charge driving under the influence of alcohol where the results of the investigation warranted a lesser charge, a different charge, or no charge at all; and did not implement an appropriate standard of supervisory review of the standardized arrest reports and supplementary police narratives to ensure the appropriateness of driving under the influence of alcohol charges.  (See Complaint, Count Seven, ¶¶80-85.)

In order to state a claim pursuant to 42 U.S.C. §1983, the complaint must allege that a person, acting under color of state law, committed an act which deprived the plaintiff of a right, privilege or immunity secured by the laws or Constitution of the United States.  See Dove v. Fordham University, 56 F.Supp. 2d 330, 335-36 (S.D.N.Y.

33

1999).  Where a plaintiff seeks to hold a municipality liable as a "person" within the

meaning of §1983, the plaintiff must establish that the municipality was in some way at

fault for the injuries sustained.  Id. at 336.

The United States Supreme Court has held that a municipality may be held

liable only where the deprivation of a Constitutional right was the result of a municipal

policy or custom.  See Monell v. Dept. of Social Services, 436 U.S. 658, 690-91, 98

S.Ct. 2427, 56 L.Ed.2d 611 (1978); Oklahoma v. Tuttle, 471 U.S. 808, 810, 105 S.Ct.

2018, 56 L.Ed.2d 791 (1985).  Thus, in order to state a claim against a municipality

pursuant to §1983, a plaintiff must:  (1) prove the existence of a municipal policy or

custom, the exercise of which caused a deprivation of the plaintiff's rights; and

(2) establish an affirmative link between the policy and the alleged constitutional

violation.  See Oklahoma v. Tuttle, 471 U.S. at 817, 823.  A "policy" is a "statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's

officers."  Monell, 436 U.S. at 690.  A "custom" is a "persistent and widespread

discriminatory practice . . . so permanent and well settled as to constitute a 'custom or

usage' with the force of law."  Id. at 691 (citation omitted).

Additionally, if the Court finds that the defendant officers did not violate the

plaintiffs' constitutional rights as alleged, the plaintiff cannot then be deemed to have

suffered any constitutional injury.  In the absence of a constitutional injury, the

plaintiff's Monell claims against the City of Middletown, and its officials, are subject to

34

dismissal as a matter of law.  See City of Los Angeles v. Heller, 475 U.S. 796, 799

(1986) (per curiam).

> In the alternative,
>
> [a]bsent evidence of a municipal policy (i.e., evidence of the policy itself
> or of the involvement of statutorily authorized policy-making officials), a
> plaintiff seeking to establish municipal liability under §1983 can only
> meet his burden by establishing that responsible supervisory officials
> acquiesced in a pattern of unconstitutional conduct by subordinates.
> Only after such a pattern of acquiescence is shown, may a municipality
> be deemed to have sanctioned the unconstitutional conduct.

Dove, 56 F.Supp. 2d at 336, citing Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980).

In the instant matter, the plaintiff concedes that the sole basis for his claim that

the City of Middletown had a policy or custom of not properly supervising or training its

police officers, of not reviewing driving under the influence charges, and of charging

persons with a DUI offense when such a charge was not warranted, is the fact that he

was charged with driving under the influence rather than with a lesser charge.  (See

Branciforte Deposition, **Exhibit B**, at pp.60-63.)  Thus, the plaintiff, by his own

admission, is unable to proffer any evidence tending to prove the existence of a

municipal policy or custom which resulted in the deprivation of his constitutional rights

as alleged.  The plaintiff's "mere assertion that a municipality has such a policy [or

custom] of unconstitutional action is generally insufficient" to establish a Monell claim.

See Colon, **Exhibit E**, at *3.  Thus, a single incident alleged in a complaint which

involves actors below the policy making level is insufficient to establish the existence

of a municipal policy or custom.  See Id.

In <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), the U.S. Supreme Court held

that, "there are limited circumstances in which an allegation of a 'failure to train' can be

the basis for liability under §1983."  <u>Id</u>. at 387.  Noting the substantial disagreement

among the Circuits, the Court held that "the inadequacy of training policy may serve as

the basis for §1983 liability only where the failure to train amounts to ***deliberate***

***indifference*** to the rights of persons with whom the police come in contact."  <u>Id</u>. at 388

(emphasis added).  The Court further observed that:

> [I]t may happen that in light of the duties assigned to specific officers or
> employees the need for more or different training is so obvious, and the
> inadequacy so likely to result in the violation of constitutional rights, that
> the policy makers of the city can reasonably be said to have been
> deliberately indifferent to the need.  In that event, the failure to provide
> proper training may fairly be said to represent a policy for which the city
> is responsible, and for which the city may be held liable if it actually
> causes injury.

<u>Id</u>. at 390 (footnotes omitted).

In order to prove such deliberate indifference, the plaintiff "must show that the

need for more or better supervision to protect against constitutional violations was

obvious."  <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995).  "An obvious

need may be demonstrated through proof of repeated complaints of civil rights

violations; deliberate indifference may be inferred if the complaints are followed by no

meaningful attempt on the part of the municipality to investigate or to forestall further

incidents."  <u>Id</u>.

36

In the instant matter, the plaintiff alleges that the City of Middletown had a policy and/or custom to inadequately supervise and train its police officers.  (See Complaint, Count Seven, ¶81).  However, the plaintiff conceded that he has no basis for his claim that the officers were not properly trained other than his belief as to the same.  (See Branciforte Deposition, **Exhibit B**, at pp.61-62.)  The plaintiff is, therefore, unable to prove that the City of Middletown had a policy or custom of failing to adequately train and supervise its officers, including the defendants.  As a result, the defendants are entitled to judgment as a matter of law as to Count Seven of the Complaint.

I.    THE PLAINTIFF'S CLAIM OF LIBEL AND DEFAMATION AGAINST THE CITY OF MIDDLETOWN FAILS AS A MATTER OF LAW

In Count Eight of the Complaint, the plaintiff alleges that the City of Middletown is responsible for the filing of the charges against him and the subsequent publication of the same in the local newspaper.  (See Complaint, Count Eight, ¶88.)  However, the plaintiff's common law claims of libel and defamation against the City of Middletown are barred by the doctrine of governmental immunity.

Under Connecticut common law, municipalities are provided with immunity from liability for their arguably tortious acts.  See Williams v. City of New Haven, 243 Conn. 763, 766 (1998); Heigl v. Bd. of Ed., 218 Conn. 1, 4 (1991); Ryszkiewicz v. New Britain, 193 Conn. 589, 593 (1994).  Additionally, a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating such immunity. See Williams, 243 Conn. at 767.

37

The doctrine of governmental immunity, however, does not offer municipalities a blanket protection for all official acts.  <u>See</u> <u>Heigl v. Bd. of Ed.</u>, 218 Conn. at 4. Municipalities enjoy governmental immunity from liability for the performance of governmental acts as distinguished from ministerial acts.  <u>See</u> <u>Id.</u>; <u>Gordon v. Bridgeport Housing Authority</u>, 208 Conn. 161, 167 (1988).  Governmental acts are defined as those which "are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature."  <u>Heigl</u>, 218 Conn. at 5.  A ministerial act is one which is "performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action."  <u>Id</u>.

Likewise, pursuant to Conn. Gen. Stat. §52-557n, a municipality may not be held liable for negligent acts or omissions which require the exercise of judgment or discretion.  Specifically, municipalities are immune for the "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."  Conn. Gen. Stat. §52-557n(a)(2)(B).

In the instant action, the plaintiff's complaint alleges a cause of action sounding in libel and defamation as a result of the publication of the criminal charges against him in a local newspaper.  The Complaint, however, does not cite any statute abrogating the City's governmental immunity.  Accordingly, Count Eight of the plaintiff's Complaint fails as a matter of law.  <u>See</u> <u>Williams</u>, <u>supra</u>.

Additionally, as indicated previously, policing the community and investigating those who break the law is a governmental function which requires the exercise of

discretion.  See Gordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181.

Thus, the City of Middletown is afforded governmental immunity with regard to the

filing of charges against the plaintiff in this matter.

Finally, as indicated previously, the plaintiff is unable to establish a prima facie

case of defamation based upon his arrest and charges of driving under the influence.

First, the plaintiff cannot satisfy his burden of proof with regard to the first element of a

cause of action in defamation, namely that the alleged defamatory statement was

false, as probable cause existed as a matter of law to arrest the plaintiff on charges of

driving under the influence in violation of Conn. Gen. Stat. §14-227a.

Additionally, it is undisputed that the charges against the plaintiff are a matter of

public record.  As such, the charges against the plaintiff are subject to disclosure

under Connecticut's Freedom of Information Act.  See Conn. Gen. Stat. § 1-210.

Finally, the plaintiff is unable to establish that his reputation suffered injury as a

result of the statement.  In fact, the plaintiff concedes that he cannot identify any

specific manner in which the charges against him have affected his reputation or

business.  (See Branciforte Deposition, **Exhibit B**, at p.69-70.)  The plaintiff, by his

own testimony, is thus unable to establish any injury to his reputation as a result of the

charges filed against him and their subsequent publication in the local newspaper.

Accordingly, the City of Middletown is entitled to judgment as a matter of law as

to the plaintiff's claims of libel and defamation.

V.    **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that summary

judgment enter in their favor as to the plaintiff's Complaint dated May 31, 2002, in its

entirety.

> DEFENDANTS,
> TOWN OF MIDDLETOWN, DAVID
> VISCONTI, in his official and individual
> capacity, DEREK PUORRO, in his
> individual capacity and MICHAEL
> KERKES, in his individual capacity
>
>
> By_____/s/_Beatrice S. Jordan____
>    Beatrice S. Jordan
>    ct22001
>    Howd & Ludorf, LLC
>    65 Wethersfield Avenue
>    Hartford, CT  06114
>    (860) 249-1361
>    (860) 249-7665 (Fax)
>    E-Mail:  bjordan@hl-law.com

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 13th day of January, 2005.

Rachel M. Baird, Esquire
Law Office of Rachel M. Baird
Stonegate Professional Building
379 Prospect Street
Torrington, CT  06790-5239

Trina Solecki, Esquire
City Attorney
City Hall
245 DeKoven Drive
P.O. Box 1300
Middletown, CT  06457

_____ /s/  Beatrice S. Jordan_ __
Beatrice S. Jordan