Westlaw.

Not Reported in F.Supp.2d  Page 1
2002 WL 519095 (D.Conn.)
**(Cite as: 2002 WL 519095 (D.Conn.))**

C

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Jill E. RITZ, Plaintiff,
v.
Michael BREEN and Sgt. R. Trench, Defendants.

**No. Civ. 3:99CV2267(CFD).**

March 11, 2002.

Driver brought § 1983 action against police officers, alleging that her arrest, for driving under the influence, was not supported by probable cause, in violation of the Fourth and Fourteenth Amendments and the Connecticut Constitution. Police officers moved for summary judgment. The District Court, Droney, J., held that: (1) officer was protected by qualified immunity from claim that investigatory stop violated the Fourth Amendment, and (2) officers reasonably could have believed they were acting in a way that did not violate a clearly established federal right.

Motion granted.

West Headnotes
**[1] Civil Rights ⚖1376(2)**
78k1376(2) Most Cited Cases
(Formerly 78k214(2))
Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. § 1983.
**[2] Civil Rights ⚖1376(2)**
78k1376(2) Most Cited Cases
(Formerly 78k214(2))
In general, public officials are entitled to qualified immunity on a § 1983 claim if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. 42 U.S.C.A. § 1983.
**[3] Civil Rights ⚖1407**
78k1407 Most Cited Cases
(Formerly 78k240(5))
**[3] Federal Civil Procedure ⚖2491.5**
170Ak2491.5 Most Cited Cases
The burden of raising and establishing the affirmative defense of qualified immunity, on a § 1983 claim, either in a motion for summary judgment or at trial, rests on the defendants. 42 U.S.C.A. § 1983.
**[4] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
Police officer was protected by qualified immunity from § 1983 claim by driver that officer's investigatory stop violated her Fourth Amendment rights; although the right to be free from investigatory stops not supported by reasonable suspicion was clearly established at the time of the incident, it was objectively reasonable for officer to believe he could stop driver for driving under the influence, in violation of Connecticut law. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; C.G.S.A. § 14-227a.
**[5] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
An officer is entitled to qualified immunity on a § 1983 claim for an investigatory stop when officers of reasonable competence could disagree as to whether there was reasonable suspicion. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.
**[6] Arrest ⚖63.5(4)**
35k63.5(4) Most Cited Cases
Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in cases involving brief investigatory stops, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot, in context of a § 1983 claim, alleging Fourth Amendment violations, against the officer. U.S.C.A. Const.Amend. 4; 42

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 519095 (D.Conn.)
**(Cite as: 2002 WL 519095 (D.Conn.))**

Page 2

U.S.C.A. § 1983.
**[7] Arrest ⚖63.5(4)**
35k63.5(4) Most Cited Cases
Although reasonable suspicion is a less demanding standard than probable cause, at least a minimal level of objective justification is required to support an investigatory stop, and the officers must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. U.S.C.A. Const.Amend. 4.

**[8] Arrest ⚖63.5(4)**
35k63.5(4) Most Cited Cases
Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. U.S.C.A. Const.Amend. 4.

**[9] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
Police officers could have objectively believed arrest of driver was reasonable and did not clearly violate an established federally protected right, and thus officers were entitled to qualified immunity on driver's § 1983 false and warrantless arrest claims; witness reported drunk driver, indicating that driver had hit speaker in restaurant drive-through lane, bumped another car, and knocked over trash can, driver performed poorly on roadside sobriety test, and driver offered no explanation at arrest for her shaking and unsteadiness. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; C.G.S.A. § 14-227a(a).

**[10] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
A police officer is entitled to qualified immunity shielding him or her from a § 1983 claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[11] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
A police officer has probable cause to arrest, supporting qualified immunity on a § 1983 false arrest claim, when he or she is in possession of facts sufficient to warrant a person to believe that the suspect had committed or was committing an offense, and courts are to consider the facts available to the officer at the time of the arrest. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[12] Civil Rights ⚖1376(6)**
78k1376(6) Most Cited Cases
(Formerly 78k214(6))
A police officer's actions are objectively unreasonable, in context of analysis to determine whether officer's actions are immune from § 1983 liability on a false arrest claim, when no officer of reasonable competence could have made the same choice in similar circumstances. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[13] Federal Civil Procedure ⚖2491.5**
170Ak2491.5 Most Cited Cases
In the false arrest context, a defendant officer is entitled to summary judgment on a § 1983 claim when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe he was acting in a fashion that did not clearly violate an established federally protected right. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[14] Federal Civil Procedure ⚖2491.5**
170Ak2491.5 Most Cited Cases
Police officers are entitled to summary judgment on a § 1983 false arrest claim if the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[15] Arrest ⚖63.4(4)**
35k63.4(4) Most Cited Cases
A police officer may rely upon the statements of victims and witnesses to determine the existence of probable cause for the arrest, regardless of the ultimate accurateness or truthfulness of the statements. U.S.C.A. Const.Amend. 4.

**[16] Civil Rights ⚖1088(4)**
78k1088(4) Most Cited Cases
(Formerly 78k133)
When considering a § 1983 false arrest claim, courts are to look to the circumstances at the time of the arrest. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[17] Civil Rights ⚖1088(4)**
78k1088(4) Most Cited Cases
(Formerly 78k133)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On a § 1983 false arrest claim, the district court examines the information that the officer had at the time the arrest was made. U.S.C.A. Const.Amend. 4 ; 42 U.S.C.A. § 1983.

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

DRONEY, J.

I. *Introduction*

**\*1** The plaintiff, Jill E. Ritz ("Ritz"), brings this action against two North Branford police officers, Michael Breen ("Breen") and Sergeant R. Trench ("Sgt.Trench"), who arrested her for the state offense of driving under the influence. [FN1] Ritz alleges pursuant to 42 U.S.C. § 1983 that the officers violated her civil rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, and Article First, Section 8 of the Connecticut Constitution by arresting her without probable cause. Although her complaint is at times unclear, the plaintiff may also allege a § 1983 claim for malicious prosecution. In addition, she appears to allege malicious prosecution and intentional infliction of emotional distress under Connecticut common law. Pending is the defendants' Motion for Summary Judgment [Doc. # 14]. For the following reasons, the motion is granted. [FN2]

> FN1. The action is brought against both defendants in their individual capacities.

> FN2. The recited facts are undisputed except where indicated.

II. *Background*

On October 13, 1999, a manager of the McDonald's Restaurant on Route 80 in North Branford, Connecticut, reported a drunk driver to the North Branford Police Department. [FN3] The manager stated that the driver had hit the speaker in the drive-through lane, hit another car in the drive-through lane, and knocked over a trash container when she was pulling into a parking space. When Sgt. Trench arrived at the McDonald's in response to the report, the driver was still present. The driver identified herself to Sgt. Trench as Jill E. Ritz, the plaintiff here. She was sitting in her car, which was parked in a parking space, eating her lunch. The plaintiff admitted to Sgt. Trench that she had "tapped" the car ahead of her in the drive-through line. Sgt. Trench did not detect an odor of alcohol on the plaintiff's breath. Sgt. Trench advised Ritz that she could leave after determining there was no damage to the speaker and after he and the manager righted the trash container.

> FN3. The police report states that Sgt. Trench completed it at 12:54 p.m., so the incident occurred sometime prior to that. *See* Memo.Law Support Def's Mot.Summ.J., Ex. A. It is not clear how the complaint from the McDonald's manager was reported to the police.

When Ritz was leaving the parking lot, she waited for another car in the travel lane. When she proceeded to turn into the road, her car crossed the center line into the lane for oncoming traffic. The defendants maintain that she also almost hit the car and failed to obey a four-way stop sign. Although Ritz admits she crossed the center lane, she denies these other contentions. Sgt. Trench watched her as she left the McDonald's lot.

Sgt. Trench then conducted a motor vehicle stop of Ritz, and Officer Breen arrived to assist. During that stop, Sgt. Trench instructed Breen to conduct a roadside sobriety test. Breen asked the plaintiff if she had consumed any alcoholic beverages that day; the plaintiff responded by blowing a deep breath directly into Breen's face. Officer Breen asked the plaintiff if she was taking any drugs; the plaintiff indicated that she usually takes both Prozac and Diazipam, but that she had not taken either drug that day. She admits that during the test she was shaking very badly and she was unsteady while she was walking. She maintains that her behavior was attributable to the presence of Officer Breen, whom she believed to have been involved in a previous incident in which a motorist was shot, and to the fact that she was wearing high-heeled shoes which she was not accustomed to wearing. However, she did not tell either officer the reasons for her unsteadiness and her shaking. The defendants contend that Ritz's speech was thick and slow, and that her eyes were bloodshot and watery. The plaintiff disputes these latter contentions.

**\*2** After conducting the field sobriety test, Breen

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

placed the plaintiff under arrest for driving under the influence. [FN4] She was transported to the North Branford Police Department in a police cruiser. At the police department, Breen administered a breath test to the plaintiff, which resulted in a negative reading. Sergeant Cipollini of the Guilford Police Department was then contacted and administered urine tests to Ritz because Officer Breen believed that drugs, rather than alcohol were involved. [FN5] The results of the tests, which were returned a few days later, showed the presence of Nordiazepam, which is commonly referred to as Valium. According to the plaintiff, the driving under the influence charge eventually was nolled.

>      FN4. While Officer Breen placed the plaintiff under arrest, it appears that the police report attached to the defendants' summary judgment papers is authored by Sgt. Trench. The Court will presume that since they worked together, they shared knowledge about the incident. *See United States v. Santa,* 180 F.3d 20, 28 (2d Cir.1999).

>      FN5. After the completion of the tests, the plaintiff was released on bond.

In her complaint, the plaintiff alleges that the officers violated the Fourth and Fourteenth Amendments by arresting her without probable cause and by maliciously prosecuting her. She also alleges that their actions violated Article First, Section 8 of the Connecticut Constitution. Finally, Ritz maintains that the defendants maliciously prosecuted her and intentionally inflicted emotional distress upon her under Connecticut common law.

The defendants argue that they are entitled to qualified immunity with respect to the plaintiff's § 1983 claims (though they only provide argument relating to her claims of false arrest and warrantless arrest under § 1983), [FN6] and to governmental immunity with respect to the plaintiff's common law malicious prosecution claims.

>      FN6. In Section B of the defendants' memorandum, "Qualified Immunity as Applied to Warrantless Arrest Claim," the defendant suggests that the plaintiff makes both false arrest and "warrantless arrest" claims, but the foregoing discussion on qualified immunity would appear to encompass both such claims.

III. *Standard*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glen Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248) After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). Additionally "where ... the non-movant bears the burden of proof at trial, the movant can satisfy its burden of production by pointing out an absence of evidence to support an essential element of the non-movant's case." *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 270 (2d Cir.1999) (citing *Celotex,* 477 U.S. at 323-24 and *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir.1998)).

IV. *Discussion*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 519095 (D.Conn.)  
**(Cite as: 2002 WL 519095 (D.Conn.))**

Page 5

A. *Section 1983 claims*

**\*3** [1][2][3] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Wyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996). The burden of raising and establishing the affirmative defense of qualified immunity, either in a motion for summary judgment or at trial, rests on the defendants. *Lee v. Sandberg,* 136 F.3d 94, 101 (2d Cir.1997).

1. *Investigatory stop*

[4] The plaintiff in this case claims that the defendants falsely arrested her for driving while intoxicated, and this issue will be discussed in Section III.A.2. However, it is not clear whether the plaintiff is also claiming that defendant Sgt. Trench violated her Fourth Amendment rights by conducting an investigatory stop when he pulled her over after she left the McDonald's parking lot, before any field sobriety tests were administered. If she does assert such a claim, Sgt. Trench is protected by qualified immunity.

Sgt. Trench's actions constituted an investigatory stop related to the offense of driving under the influence. The right to be free from investigatory stops without reasonable suspicion was clearly established at the time of the incident. *See Jemmott v. City of New York,* No. 96-CV-3589(JG), 1998 WL 812579, at \* 7 (E.D.N.Y. Apr.27, 1998) (finding that such a right was clearly established in September 1995); *Kuriakose v. City of Mount Vernon,* 41 F.Supp.2d 460, 469 (S.D.N.Y.1999) (stating that the law on investigatory stops is clearly established); *Dempsey v. Town of Brighton,* 749 F.Supp. 1215, 1227 (W.D.N.Y.1990) ("It is, of course, a well established right that a citizen cannot be arbitrarily stopped by the police without some legitimate basis.").

[5] It was objectively reasonable for Sgt. Trench to believe his acts did not violate that right, however. *See Wyant,* 101 F.3d at 857. An officer is entitled to qualified immunity for an investigatory stop when officers of reasonable competence could disagree as to whether there was reasonable suspicion under *Terry v. Ohio. Dempsey,* 749 F.Supp. at 1227.

[6][7][8] "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in [cases involving brief investigatory stops], the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu,* 534 U.S. 266, ----, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal citations and quotations omitted). "Although 'reasonable suspicion' is a 'less demanding standard' than probable cause, 'at least a minimal level of objective justification' is required, and the officers 'must be able to articulate more than an "inchoate and unparticularized suspicion or hunch" of criminal activity." *United States v. Ferguson,* 130 F.Supp.2d 560, 565 (S.D.N.Y.2001) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))).

**\*4** When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See, e.g., United States v. Cortez,* 449 U.S. 417, 417-418 (1981). This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id.,* at 418. *See also Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, *Terry, supra,* at 27, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a preponderance of the evidence standard, *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
*Arvizu,* 534 U.S. at ----  - ----, 122 S.Ct. at 750-51.

In this case, it was objectively reasonable for Sgt. Trench to believe that he could stop Ritz for driving under the influence under Conn.Gen.Stat. § 14- 227a , entitled "Operation while under the influence of liquor or drug, while having an elevated blood alcohol content or while impaired." [FN7] The following undisputed facts are relevant to this determination: the manager of the McDonald's reported that Ritz had hit the speaker, another vehicle in line, and a refuse container; that Ritz admitted to Sgt. Trench that she had bumped the vehicle ahead of her in line; and that although she did not have the smell of alcohol on her breath while Sgt. Trench spoke with her in the parking lot, when leaving she made a wide turn and crossed the center line. [FN8] The totality of these circumstances, including Ritz's actions before and after she left the McDonald's parking lot, indicates at least that reasonable officers could disagree as to whether Sgt. Trench had reasonable, particularized suspicion that Sgt. Trench was committing the traffic violation of driving while intoxicated, which includes both alcohol or drugs. Certainly, the erratic driving behavior observed by Sgt. Trench after he initially let the plaintiff go, in addition to the previous behavior, justifies the stop. *Cf. State v. Bolanos,* 58 Conn.App. 365, 753 A.2d 943, 945-46 (Conn.App.Ct.2000) (concluding in the context of a motion to suppress that police officer had a reasonable and articulable suspicion for stopping the defendant for driving under the influence where the stop was based upon a report from a an employee at a local nightclub that an intoxicated person had left the establishment and was driving a car in a particular direction on Route 1). As a result, Sgt. Trench is entitled to qualified immunity on this basis.

> FN7. Subsection (a) of the statute states,
> No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle ... (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundreths of one percent or more of alcohol, by weight.
> Conn.Gen.Stat. § 14-227a(a). This statute has been amended since the time of the plaintiff's arrest, but that amendment does not affect subsection (a). *See* 2001 Conn.Legis.Serv.P.A. 01-201 (H.B.6892) (West).

> FN8. He also cites other observations that led to his pulling over the plaintiff, but those observations are disputed by Ritz and thus will not be considered by the Court on this motion.

2. *False arrest*

**\*5** [9] As stated above, the parties have focused their arguments on whether the defendants are entitled to qualified immunity with respect to the plaintiff's claims that they falsely arrested her for driving while intoxicated.

"The right not to be arrested or prosecuted without probable cause has, or course, long been a clearly established constitutional right." *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir.1991); *see also Lee,* 136 F.3d at 102. The plaintiff has alleged a violation of such a right.

[10][11][12][13][14] As to the second prong of the qualified immunity standard, "[a] police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 128 (2d Cir.1997). An officer has probable cause to arrest when he or she is in possession of facts sufficient to warrant a person to believe that the suspect had committed or was committing an offense, and courts are to consider the facts available to the officer at the time of the arrest. *Id.* "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

similar circumstances." *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir.1995). In the false arrest context, a defendant officer is entitled to summary judgment when

> "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ] to believe he was acting in a fashion that did not clearly violate an established federally protected right."

*Id.* at 420 (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (internal quotations omitted)). In other words, police officers are entitled to summary judgment if "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances." *Id.* at 421.

The police report written by Sgt. Trench does not indicate the specific statute under which Ritz was charged, but it does include an offense description of "DUI-Drugs," and the complaint states that the plaintiff was arrested for Driving Under the Influence. Based on this information, it appears that Ritz was arrested under Conn.Gen.Stat. § 14-227a. [FN9] The elements of § 14-227a(a) are "(1) operation; of (2) a motor vehicle; (3) while under the influence of liquor and/or drugs." *State v. Stuart,* No. MV94-0613469S, 1994 WL 174473, at \*5 (Conn.Super.Ct. May 2, 1994) (listing the "essential elements" of § 14-227a(a) for purposes of a state pretrial alcohol education system statute).

> FN9. For the text of this statute, see *supra* note 5.

[15][16][17] The undisputed facts demonstrate that Sgt. Trench and Breen are entitled to qualified immunity for the plaintiff's claims of false arrest and warrantless arrest. It is undisputed that a manager of the McDonald's called the North Branford police to report a drunk driver, indicating that the driver had hit the speaker in the drive-through lane, bumped another car in the drive-through lane, and knocked over a trash container when she was pulling into a parking space. "[A] police officer may rely upon the statements of victims and witnesses to determine the existence of probable cause for the arrest, *see Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000), regardless of the ultimate accurateness or truthfulness of the statements. *See Bernard v. United States,* 25 F.3d 98, 103 (2d Cir.1994)." *Hotaling v. LaPlante,* 167 F.Supp.2d 517, 521 (N.D.N.Y.2001). It also is undisputed that Ritz was that driver, and that she at least struck another car. Sgt. Trench, apparently believing he did not have probable cause at the time to arrest the plaintiff when he first spoke to her because he did not detect the smell of alcohol on her breath, permitted her to go once she finished her lunch. However, the plaintiff admits that she made a wide turn while pulling out of the parking lot of the McDonald's, and once stopped, that she was unsteady on her feet and that she performed poorly on the roadside sobriety test administered to her. *See* Pl.'s Local R. 9(c)(2) Statement, Ex. A, Ritz Dep. at 42, 48-49. Even when the disputed contentions that Ritz nearly hit the car and failed to obey a four-way stop sign when exiting the parking lot are not considered, based on the totality of the circumstances, it was objectively reasonable for the officers to believe there was probable cause for the arrest because they were aware of facts sufficient to warrant them believing that Ritz had committed an offense under Conn.Gen.Stat. § 14-227a of operating a vehicle while under the influence of drugs. *Cf. Newby v. Town of Cromwell,* 25 F.Supp.2d 56, 58-59 (D.Conn.1998) (concluding that defendant police officer was entitled to qualified immunity for arresting the plaintiff for driving while intoxicated where the plaintiff's car was pulled over to the side of the road at 1:00 a.m., the plaintiff smelled of alcohol and eyes that were glassy and red, the plaintiff admitted that he had been drinking earlier in the evening, and the plaintiff skipped a letter and a number on the field sobriety tests administered); *Luzzi v. Mack,* No. 95 Civ. 9720(LAP), 1998 WL 150496, \*4-6 (S.D.N.Y. March 31, 1998) (concluding that defendant police officer had probable cause for arrest of the plaintiff under New York statute prohibiting driving while one's ability to do so is impaired by the use of a drug where the plaintiff, after an accident, exhibited slow speech and a distorted sense of time, failed to answer certain questions, responded lethargically to a horizontal gaze nystagmus test, and stated that she was taking the anti-depressants Prozac and Trazadone). While Ritz may have had credible explanations for her unsteadiness, courts are to look to the circumstances at the time of the arrest. *Ricciuti,* 124 F.3d at 128. Here, according to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff's deposition, she did not voice any explanation to the officers, and thus they had no way of knowing the reasons for her shaking and her unsteadiness. *See* Pl .'s Local R. 9(c)(2) Statement, Ex. A, Ritz Dep. at 49-50. Further, the defendants had arguable probable cause for the arrest even before they received the results of both tests performed at the police station. *Cf. Luzzi,* 1998 WL 150495, at *5-6 (reaching the conclusion that the defendant officer had actual probable cause to arrest the plaintiff). It is typically more difficult for investigating officers to determine impairment on the basis of drug ingestion as opposed to alcohol ingestion if, for no other reason, the absence of the easily recognized odor of alcohol. Ritz told the officers that she usually takes two anti-depressant medications, but did not take any that day. This fact could have indicated that she was not under the influence of any drugs or that her unusual behavior could have been caused by her failure to take her regularly prescribed medications. Combined with the plaintiff's demeanor and performance on the field sobriety tests, however, it also would have been reasonable for Sgt. Trench and Breen to believe that it suggested that the plaintiff had taken other prescription drugs or that she could have taken an unusually high dose @the previous day. Finally, we are to examine the information that the officer had at the time the arrest was made. *Ricciuti,* 124 F.3d at 128.

**\*6** Thus, no reasonable jury, even looking at the evidence in the light most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendants to believe they were acting in a way that did not clearly violate an established federally protected right. *Lennon,* 66 F.3d at 420.

B. *Other claims*

The plaintiff also appears to allege § 1983 claims based upon malicious prosecution and Article First, Section 8 of the Connecticut Constitution. However, the defendants do not address these claims in their motion for summary judgment. Accordingly, they must remain in the case at this time. The plaintiff is directed to notify the Court within thirty days of the date of this ruling as to whether she intends to pursue those claims and to specify the nature of those claims. If the plaintiff is pursuing additional claims, defendants are free to move to file a supplemental motion for summary judgment on them. Given the possibility of such a federal claim, the Court declines address the plaintiff's state law claims at this time.

V. *Conclusion*

For the foregoing reasons, the defendants' motion for summary judgment [Doc. # 14] is granted.

2002 WL 519095 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit D