## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH R. BRANCIFORTE, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:02-cv-928(AVC) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF MIDDLETOWN, | : | |
| POLICE SERGEANT DAVID VISCONTI, | : | |
| SUPERVISOR, MIDDLETOWN POLICE | : | |
| DEPARTMENT, in his official and individual | : | |
| capacities, POLICE OFFICER DEREK PUORRO, | : | |
| in his official and individual capacities, and | : | |
| POLICE OFFICER MICHAEL KERKES, in his | : | |
| official and individual capacities, | : | |
| | : | |
| Defendants. | : | JUNE 20, 2005 |

## PLAINTIFF'S MEMORANDUM OF LAW[1] IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

---

[1]

**OUTLINE OF MEMORANDUM**

**I.**    **Summary Remarks**
**II.**    **Facts**
    A.  The Initial Stop
    B.  The Arrest
    C.  The Blood Alcohol Test
    D.  The Criminal Session Proceedings and Plaintiff's Notice of Intent to Sue
**III.**    **Arguments of Law**
    A.  Standard for Summary Judgment
    B.  Plaintiff's Claims of Malicious Prosecution and False Arrest Do Not Fail
        i.  The Record Shows Both an Absence of Reasonable Suspicion for the Initial Stop and Probable Cause for the Arrest
            1.  *The Right Turn from Main Street to Liberty Street*
            2.  *The Rear Marker Plate*
            3.  *The Field Sobriety Tests*
            4.  *The Nolles and Dismissal*
        ii.  Standard for Summary Judgment in Malicious Prosecution and False Arrest Claims
        iii.  Analysis of Case Law Cited by Defendants
    C.  The Town of Middletown's Policies and Customs Proximately Caused the Deprivation of Plaintiff's Constitutional Rights Guaranteed Under the United States Constitution
    D.  Plaintiff Sets Forth a *Prima Facie* Claim of Libel *Per Se*
    E.  Defendants Are Not Protected By the Doctrines of Qualified or Governmental Immunity From Plaintiff's Claims
**IV.**    **Conclusion**

**ORAL ARGUMENT REQUESTED**

Plaintiff Joseph R. Branciforte submits this memorandum in opposition and response to the Motion for Summary Judgment against all counts of his Complaint[2] filed by Defendant Town of Middletown and Defendants Derek Puorro, Michael Kerkes, and David Visconti in their individual and official capacities.

## I.     SUMMARY REMARKS

The plain language and legislative intent associated with the statutory laws governing the prohibited operation of motor vehicles in the state of Connecticut while under the influence of alcohol or drugs and the Defendants' actions preceding, in the course of, and subsequent to Plaintiff's arrest by the Middletown Police Department on March 1, 2001, provide adequate measure of inference for a reasonable trier of fact to conclude that Plaintiff's arrest, charge, and prosecution for operating under the influence of alcohol or drugs were not supported by probable cause.

- First, section 14-227a(a) of our Connecticut General Statutes ("General Statutes") provides that a person violates the law by operating a motor vehicle, under General Statutes § 14-227a(a)(1), while under the influence of intoxicating liquor or any drug or both or, under General Statutes § 14-227a(a)(2), while having an elevated blood alcohol content.  In the absence of probable cause to seize and arrest a person for operating under the influence based on a peace

---

[2] The Complaint alleges:

- o  In Counts One and Seven:  Violation of Plaintiff's civil right to be free from unlawful seizure and arrest pursuant to the United States Constitution against all individual Defendants and the Town of Middletown, respectively.  42 U.S.C. § 1983.
- o  In Count Two:  False Arrest against individual Defendants Derek Puorro and Michael Kerkes.
- o  In Count Three:  Malicious Prosecution against all individual Defendants.
- o  In Counts Four and Eight: Libel and Defamation against all individual Defendants and Town of Middletown, respectively.
- o  In Count Five:  Intentional Infliction of Emotional Distress against all individual Defendants.
- o  In Count Six:  Negligent Infliction of Emotional Distress against all individual Defendants.

In accordance with the stringent standards set forth in Connecticut courts for extreme and outrageous conduct required by an intentional infliction of emotional distress claim, Plaintiff does not oppose Defendants' motion for summary judgment against this claim at Count Five.

officer's[3] field observations concerning erratic driving, odor of alcohol, and performance on

sobriety tests, such officer does not have the opportunity to collect evidence regarding a person's

blood alcohol content.  The relationship between subsections (a)(1) and (a)(2) of General

Statutes § 14-227a may be summarized as follows:  A prosecution in court under § 14-227a(a)(1)

may proceed whether or not blood alcohol content (BAC) evidence under subpart § 14-

227a(a)(2) is available, admissible, or suppressed, but a prosecution in court under § 14-

227a(a)(2) is dependent upon probable cause for an arrest under § 14-227a(a)(1).

- Second, our state legislature has indicated its intent to provide public notice in open

court of any reduction, *Nolle Prosequi* ("nolle"), or dismissal of a violation under General

Statutes § 14-227a:

> If a person is charged with a violation of the provisions of
> subsection (a) of this section, the charge may not be reduced,
> nolled or dismissed unless the prosecuting authority states in open
> court such prosecutor's reasons for the reduction, nolle or
> dismissal.

General Statutes § 14-227a(f).[4]  The prosecuting authority (or "prosecutor") in the matter of

State of Connecticut v. Joseph R. Branciforte did announce in open court her reason for entering

a nolle to the charge against Plaintiff of operating under the influence (OUI):  "Arrested for

drunk driving; took a test, took two tests actually.  Fortunately for him, point 0-1 both times.  It

was under the legal limit."  (March 15, 2001, Hr'g Tr., Pl.'s Local Rule (LR) 56(a)2 Statement,

Ex. 1 at 2)  Plaintiff's BAC test results, while they did provide a reason for the prosecutor to

decline prosecution under § 14-227a(a)(2), did not provide a reason for the prosecutor to decline

---

[3] General Statutes § 53a-3(9) provides, in relevant part:  "'Peace officer' means a member of the Division of State Police within the Department of Public Safety or an organized local police department ...."

[4] The Defendants misstate subsection (f) when they represent in their Memorandum of Law in Support of Motion for Summary Judgment that "the charge may not be reduced or dismissed by the arresting officers."  (Defs.' Mem. of Law in Supp. of Summ. J. ("Defs.' Mem.") at 14)  An arresting officer is not a "prosecuting authority."  A prosecuting authority in the state of Connecticut is a state employee within the Division of Criminal Justice.  The arresting officers in the instant matter are municipal employees for the Town of Middletown with no authority to prosecute motor vehicle or criminal cases in state court.  Conn. Gen. Stat. §§ 51-275 et seq.

prosecution under § 14-227a(a)(1).  The evidentiary deficiency for the prosecutor in subsection (a)(2) is evident in Plaintiff's BAC test results.  The evidentiary deficiency for the prosecutor in subsection (a)(1) reasonably may be inferred to have been founded in the credibility and reliability of Defendant Derek Puorro ("Off. Puorro")'s support for the initial detention and arrest of Plaintiff for OUI, otherwise there is little if any explanation for the nolle and later dismissal of the OUI charge.

 &bull; Third, the purpose of notice is to provide an opportunity for responsive action and an opportunity to be heard.  The Defendants were each provided notice of the nolle by the prosecutor's statement on March 15, 2001, in open court of her reason.  (March 15. 2001, Hr'g Tr., Pl.'s LR 56(a)2 Statement, Ex. 1)  A more direct notice to the Defendants of the prosecutor's action occurred when Plaintiff's Notice of Intent to Sue was served at the clerk's office for the Town of Middletown on August 31, 2001.  (Notice of Intent to Sue, Pl.'s LR 56(a)2 Statement, Ex. 2)  The Defendants' failure to submit a warrant alleging an offense under General Statutes § 14-227a(a)(1) within thirteen (13) months following the nolle may be inferred as an admission by the Defendants that probable cause did not exist for the arrest and would not support the issuance of a warrant.

 &bull; Fourth, the Town of Middletown misapplied a state statute with the result that the individual Defendants engaged in a policy that prevented them from charging Plaintiff based on all the evidence gathered in the course of the arrest and investigation.  Specifically, the Town of Middletown represents in its Memorandum of Law in Support of Motion for Summary Judgment ("Memorandum") that section 14-227a(f) mandates that a driving while under the influence charge "may not be reduced or dismissed by the arresting officers."  (Defs.' Mem. at 14)  However, section 14-227a(f) actually provides, in relevant part:  "[T]he charge may not be

reduced, nolled or dismissed unless the prosecutor states in open court such prosecutor's reasons for the reduction, nolle or dismissal." An arresting officer is not a "prosecuting authority." A prosecutor in the state of Connecticut is a state employee within the Division of Criminal Justice. The arresting officers in the instant matter, Off. Puorro and Off. Kerkes, as well as Sgt. Visconti, are municipal employees for the Town of Middletown with no authority to prosecute motor vehicle or criminal cases in state court. See Conn. Gen. Stat. §§ 51-275 et seq.

In sum, the claims set forth in Defendants' Motion and Memorandum of Law in Support of Summary Judgment are limited to four assertions, specifically, that (1) reasonable suspicion and probable cause supported Off. Puorro's and Defendant Michael Kerkes ("Off. Kerkes")'s initial stop and arrest, respectively, of Plaintiff[5]; (2) any deprivation of Plaintiff's Constitutional rights cannot be attributed to a policy or custom of the Town of Middletown[6]; (3) Plaintiff does not set forth a *prima facie* case of defamation[7]; and (4) qualified immunity and governmental immunity warrant judgment on the federal and state law claims, respectively.[8]

These four assertions create genuine issues of material fact because, as set forth below, Plaintiff contends that (1) the reasonable suspicion and probable cause claimed by Defendants is negated by the facts as well as the credibility of the arresting officer's observations and actions following the arrest; (2) the Town of Middletown had a policy that prevented arresting officers from charging an arrestee based on all the evidence gathered in the course of an investigation for operating while under the influence; (3) a *prima facie* case of libel *per se* exists; and (4) the absence of even arguable probable cause and the misperformance of ministerial acts divest the Defendants of qualified as well as governmental immunity.

---

[5] See Defs.' Mem. at sections IV(A), B, and D.
[6] See Defs.' Mem. at section IV(H).
[7] See Defs.' Mem. at sections IV(G) and I.
[8] See Defs.' Mem. at sections IV(B), C, E, and I.

## II.     FACTS

A.  The Initial Stop

Plaintiff was operating his 1989 Jeep Wrangler ("Jeep") on Main Street in Middletown at approximately 1 A.M. on March 1, 2001.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 26)  As he approached the intersection of Main and Liberty Streets, he observed a police car parked at a gas station located on a corner at that intersection.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 26) (Middletown Police Department Supplementary Report (hereinafter, "MPD SR"), Defs.' Mem. Ex. A at 1)  Plaintiff turned right onto Liberty Street from Main Street without using a turn signal.  There was no traffic on the road.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 27)  The police car, containing driver Off. Puorro and passenger Off. Kerkes, followed Plaintiff's Jeep onto Liberty Street.  Off. Puorro did not stop the Plaintiff at that time (Pl.'s Dep. Tr., Defs.' Mem., Ex. B. at 28-32) but followed Plaintiff (MPD SR, Defs.' Mem., Ex. A at 1) (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 30-31) as Plaintiff continued driving and making various turns onto side streets in the area of Liberty Street at a rate of 5-10 miles per hour.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 31)

The direct route from the intersection of Liberty and Main Streets to the location of Off. Puorro's initial stop and detention of Plaintiff at 79 Prospect Street is six-tenths of a mile. (Affidavit of Cliffton T. Baird (hereinafter, "CTB Aff.") ¶¶ 2-4) (Area Map, Pl.'s LR 56(a)2 Statement, Ex. 3)  However, Plaintiff did not use this direct route and, once on Liberty Street, Plaintiff made a minimum of three additional turns to end up back on Liberty Street to connect with Prospect Street where he was stopped by Off. Puorro.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 30-31)  (CTB Aff. ¶ 6)  (Area Map, Pl.'s LR 56(a)2 Statement, Ex. 3)  The distance between the intersection of Liberty and Main Streets and 79 Prospect Street, employing the minimum

6

amount of three turns to leave and reenter Liberty Street, is seven-tenths of a mile.  (CTB Aff. ¶ 5)

Off. Puorro, after following Plaintiff for this distance during a time span of approximately five minutes "noticed that his [Plaintiff's] rear license plate was not illuminated" and stopped the Plaintiff "in the area of 79 Prospect Street."  (MPD SR, Defs.' Mem., Ex. A at 1) (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 31)  Plaintiff's Jeep did not have a rear marker light for his license plate because the bottom of the tail light covering is transparent and illuminates the license plate. (Affidavit of Joseph R. Branciforte, (hereinafter, ("Pl.'s Aff.") ¶ 10) The tail lights on Plaintiff's Jeep were operating on March 1, 2001, at 1 A.M.  (Pl.'s Aff. ¶ 11)  Plaintiff was never stopped prior to March 1, 2001, or subsequent to March 1, 2001, for failure to illuminate the rear marker plate of his Jeep.  (Pl.'s Aff. ¶ 12)

A genuine issue of fact exists regarding the reasonableness of Off. Puorro's and Off. Kerkes's initial stop and detention of Plaintiff.  Plaintiff was not stopped following his turn from Main Street onto Liberty Street.[9]  He was stopped after making several turns and traveling more than six-tenths of a mile for approximately five minutes.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 31) (CTB Aff. ¶ 4)  In his report, Off. Puorro states that Plaintiff was stopped after he noticed that the Jeep's rear marker light was not illuminated.  (MPD SR, Defs.' Mem., Ex. A at 1)[10] Plaintiff contends that his rear marker light was in working condition and illuminated.  (Pl.'s Aff. ¶¶ 7-9)  Both charges of improper turn and failure to illuminate rear marker plate were nolled in

---

[9] Compare Off. Puorro's statement in his Supplementary Report, "I followed the accused and noticed that his rear license plate was not illuminated.  I stopped the accused in the area of 79 Prospect St."  (MPD Supp. Rep., Defs.' Mem., Ex. A at 1) with Defendants' Memorandum, "Specifically, on March 1, 2001, at approximately 1:21 a.m., the plaintiff's motor vehicle was stopped by Officers Derek Puorro and Michael Kerkes after the plaintiff made an improper turn."  (Defs.' Mem. at 1)

[10] General Statutes § 54-1f provides, in relevant part:  "Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended *in the act* or on the speedy information of others ..." (emphasis in italics added)

court and later dismissed after thirteen months.  See Conn. Gen. Stat. § 54-142a.  (Original

Information, Pl.'s LR 56(a)2 Statement, Ex. 4)  A reasonable trier of fact may infer that Off.

Puorro and Off. Kerkes stopped Plaintiff for making various lawful turns which is not sufficient

to constitute reasonable suspicion.

     B.  The Arrest

     Off. Puorro contends that Plaintiff: (1) emitted an odor of alcohol; (2) had eyes that were

"glassy and bloodshot"; (3) slurred his speech; and (4) moved in a slow and uncoordinated

manner.  (MPD SR, Defs.' Mem., Ex. A at 1)  Conversely, Plaintiff contends that: (1) his speech

was not slurred; (2) his movement was not "uncoordinated and slow for a person of his height,

weight, and physical condition"; and (3) his gait was steady while exiting his Jeep to perform

sobriety tests.  (Pl.'s Aff. ¶¶ 19)

     After stopping Plaintiff, Off. Puorro requested that he perform five field sobriety tests.

(MPD SR, Defs.' Mem., Ex. A at 1)  Plaintiff passed the first field sobriety test entitled, "reverse

counting."  (MPD SR, Defs.' Mem., Ex. A at 1) (Officer's DUI Arrest and Alcohol Test Report

("Form A-44"), Pl.'s LR 56(a)2 Statement, Ex. 5 at 1)  Next was the "split alphabet" test, which

Off. Puorro contends the Plaintiff failed, contrary to Plaintiff's assertion.  (MPD SR, Defs.'

Mem., Ex. A at 1) (Pl.'s Aff. ¶¶ 13, 15)  Off. Puorro then requested that Plaintiff take the

Horizontal Gaze Nystagmus ("HGN"), Walk-and-Turn ("Walking"), and One-Leg-Stand

("Standing") tests.  (MPD SR, Defs.' Mem., Ex. A at 1) (Form A-44, Pl.'s LR 56(a)2 Statement,

Ex. 5 at 1)  Off. Puorro alleged that Plaintiff failed these tests. (MPD SR, Defs.' Mem., Ex. A at

1) (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 1)  The Supplementary Report and Form A-

44 prepared by Off. Puorro reveal inconsistencies in his observations.[11]  Off. Puorro's record of

---

[11] Form A-44, entitled "Officer's DUI Arrest and Alcohol Test Refusal or Failure Report," is a mandatory report
prepared by peace officers within the state of Connecticut in accordance with General Statutes § 14-277b(c).  Conn.

the field tests reveals inconsistencies.  (MPD SR, Defs.' Mem., Ex. A) (Form A-44, Pl.'s LR

56(a)2 Statement, Ex. 5 at 1)  Plaintiff's performance and ability to pass the HGN test may have

been affected by an ocular injury he sustained two days earlier, an injury noticed by Off. Puorro

and Off. Kerkes.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 45) (Pl.'s Aff. ¶¶ 14-15)  In his

Supplementary Report, Off. Puorro states that during the Walking test, Plaintiff: (1) "lost his

balance during the instructional phase"; (2) started too soon; (3) raised his arms; (4) did not walk

heel to toe; (5) took an incorrect number of steps; (6) repeatedly stepped off the line; (7) stopped

to steady himself; and (8) turned incorrectly.[12]  (MPD SR, Defs.' Mem., Ex. A at 1)  Off. Puorro

also stated, in his Supplementary Report, that during the Standing test, Plaintiff: (1) swayed; (2)

"raised his arms while struggling to maintain his balance"; (3) "bent his knees"; and (4) "put his

foot down at the count of 2, 3, and 4."  (MPD SR, Defs.' Mem., Ex. A at 1)  However, in

contradiction to his Supplementary Report, Off. Puorro's Form A-44  states that during the

Standing test, Plaintiff: (1) swayed while balancing; (2) hopped; (3) used his arms for balance by

raising them over six inches; (4) could not perform the test because he put his foot down three

times; (5) put his foot down; and (6) bent his knee.  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex.

5 at 1)[13]  Yet another inconsistency in Off. Puorro's record of the arrest is the fact that he did not

record any erratic driving in his Supplementary Report, yet claims to have observed the Plaintiff

driving erratically in the A-44.  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 1)  These

inconsistencies notwithstanding, Defendant David Visconti ("Sgt. Visconti") notarized Off.

---

Gen. Stat. § 14-277b(c) ("The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer.")  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 1)

[12] Despite allegedly not being able to stand, Plaintiff had blood alcohol content readings of .019 and .012 and was able to drive at a steady pace without committing any traffic violations for five minutes while being followed. (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 1) (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 29-31) (Pl.'s Aff. ¶ 3) Furthermore, Plaintiff asserts that he did in fact have a steady gait and maintained his balance.  (Pl.'s Aff)

[13] Form A-44 notes that Plaintiff did inform Off. Puoror of an injury which Plaintiff had incurred to his eye and right leg only two days before when Plaintiff was assaulted.  (Form A-44, Mem., Ex. C) (Pl.'s Dep. Tr., Mem. Ex. B at 48) (Pl.'s Aff. ¶¶ 13-15)

Puorro's Supplementary Report and Form A-44.  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 1)  In sum, the credibility and reliability of Off. Puorro's Supplementary Report and Form A-44 create a genuine issue of material fact whether probable cause existed for Plaintiff's arrest.

### C.  The Blood Alcohol Test

Off. Puorro and Off. Kerkes transported Plaintiff to the Middletown Police Department where Plaintiff submitted to a chemical analysis of his breath.[14]  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 2)  The results indicated that Plaintiff did not have an "elevated blood alcohol content."[15]  Both Off. Puorro and Off. Kerkes noted Plaintiff's BAC.  (Pl.'s Aff. ¶¶ 21, 25)  However, no urine or blood sample was requested to test for drugs, notwithstanding: (1) that procedure allows for such a step and (2) the inconsistency of the field observations noted by Off. Puorro in his report and Plaintiff's BAC.  (Pl.'s Aff. ¶¶ 22, 24) (MPD DWI Arrest Flow Chart ("Flow Chart"), Pl.'s LR 56(a)2 Statement, Ex. 6) (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 2)  In fact, Plaintiff was asked not to file suit following the breath test.  (Pl.'s Aff. ¶ 25)  During this entire time, Plaintiff was completely cooperative with the police officers.  (Pl.'s Aff. ¶ 23)

### D.  The Criminal Session Proceedings and Plaintiff's Notice of Intent to Sue

At Plaintiff's arraignment and *pro se* appearance on March 15, 2001, at the State of Connecticut, Superior Court for the Judicial District of Middlesex at Middletown, Criminal Session, the prosecutor in the matter of <u>State of Connecticut v. Joseph R. Branciforte</u> entered a nolle to the charge of operating a motor vehicle while under the influence and the remainder of

---

[14] General Statutes § 14-227b(a) provides:  "Any person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent."
[15] At the time of his arrest on March 1, 2001, an "elevated blood alcohol content" was defined by General Statutes §14-227a(a) as "a ratio of alcohol in the blood of such person that is ten-hundredths of one percent of alcohol or more of alcohol, by weight."  Public Act 02-1 amended General Statutes § 14-227a(a) to define "elevated blood alcohol content" as "a ratio of alcohol in the blood of such person that is eight -hundredths of one percent of alcohol or more of alcohol, by weight."

the motor vehicle counts submitted by Off. Puorro, Sgt. Visconti, and the Middletown Police

Department.[16]  (Original Information, Pl.'s LR 56(a)2 Statement, Ex. 4)  The prosecutor did not

require that Plaintiff admit to probable cause in exchange for the nolles.  (Hr'g Tr., Pl.'s LR

56(a)2 Statement, Ex. 1 at 2)

     The Town received Plaintiff's "Notice of Civil Rights Infringement and Intent to Sue"

("Notice of Intent to Sue") on August 31, 2001.  (Notice of Intent to Sue, Pl.'s LR 56(a)2

Statement, Ex. 2)  At that time, on August 31, 2001, Defendants had notice that nolles had

entered on March 15, 2001, and that the charges would be dismissed thirteen (13) months

following the date of the nolles if a new warrant did not issue.  See Cislo v. Shelton, 240 Conn.

590, 594 (1997) ("We conclude, contrary to the Appellate Court, that an automatic erasure under

§ 54-142a (c) that occurs thirteen months following the entry of a nolle prosequi constitutes a

dismissal within the meaning of § 53-39a.")  The Town and its officers failed to act on the

Notice of Intent to Sue even though Off. Puorro had submitted the arrest for prosecution based

on his field observations and the nolle had entered based on a test related to the Plaintiff's BAC.

Yet, according to State v. Anonymous, 237 Conn. 501, 517 (1996) (quoting Fraser v. Henninger,

173 Conn. 52, 55 (1977)):

> [T]he purpose of a provision requiring statutory notice of a claim
> as a condition precedent to bringing an action for damages against
> the municipality is to give the officers of the municipality such
> information as will enable them to make a timely investigation of
> the claim and to determine the existence and extent of liability.

If the Defendants believed that there was probable cause for Plaintiff's arrest then the Defendants

had seven and one-half months to contact the prosecutor and/or submit a warrant for Plaintiff's

arrest.  However, the Town, Off. Puorro, Off. Kerkes, and Sgt. Visconti did not take any action

---

[16] Plaintiff was charged with the three other motor vehicle offenses, specifically, illegal operation of a motor vehicle without minimum insurance, Conn. Gen. Stat. § 14-213b, improper turn, Conn. Gen. Stat. § 14-242, improper rear/marker lamps, Conn. Gen. Stat. § 14-96c.  (Original Information, Pl.'s LR 56(a)2 Statement, Ex. 4)

to submit a new warrant prior to April 15, 2002.  (Defs. Interrogs. Res. Nos. 1-4, 6, Pl.'s LR 56(a)2 Statement, Ex. 7)  In fact, there was no correspondence at all from the Defendants to the prosecutor.  (Defs.' Interrog. Res. Nos. 1-4, 6, Pl.'s LR 56(a)2 Statement, Ex. 7)

## III.    ARGUMENT OF LAW

A.  Standard for Summary Judgment

Summary judgment should only be granted when the evidence put forth shows that there are no genuine issues of material fact and that the moving party would be entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).

The trial court must view all inferences and ambiguities in a light most favorable to the nonmoving party when determining whether the record presents a genuine issue for trial.  See Bryant v. Maffucci, 923 F.2d at 982 (2d Cir. 1991).  A party successfully raises a genuine issue of material fact "if a reasonable jury could find for" that party.  Anderson, 477 U.S. at 252. However, a mere factual dispute is not enough to defeat a motion for summary judgment, there must be a genuine issue of material fact.  Id. at 247-48.

When opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(d).  "The mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion

for summary judgment." Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000). Rather, there must be evidence upon which a jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 248.

     B.  Plaintiff's Claims of Malicious Prosecution and False Arrest Do Not Fail

     The factual evidence and credibility of the Defendants regarding reasonable suspicion and probable cause, viewed in a light most favorable to Plaintiff, presents a genuine issue of material fact whether the initial detention and subsequent arrest of Plaintiff violated the Fourth Amendment to the United States Constitution.[17]  A reasonable jury would be asked to consider: (1) whether Off. Puorro stopped plaintiff because of a traffic violation; (2) whether Off. Puorro observed an improperly illuminated rear marker plate on Plaintiff's Jeep; and (3) the accuracy and consistency of Off. Puorro's observation and recording of Plaintiff's performance in field sobriety tests.

     i.  The Record Shows Both an Absence of Reasonable Suspicion for the
        Initial Stop and Probable Cause for the Arrest

     *1.  The Right Turn from Main Street to Liberty Street*

     A genuine issue of material fact exists whether Off. Puorro initially detained Plaintiff for failure to use a right turn signal at approximately 1 A.M. when making a turn on a roadway with no traffic.  Off. Puorro followed Plaintiff for approximately five minutes through narrow and often one-way roads.  (CTB Aff. ¶¶ 4, 7-8) (Pl.'s Dep. Tr., Defs.' Mem. Ex. B at 29-31)  While he was followed, Plaintiff obeyed the traffic laws, drove at a steady speed between five and ten miles per hour, and stopped for at least three stop signs on the route.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 28-32) (CTB Aff. ¶ 6)

---

[17] In sections IV(A)(1) and (A)(2) and IV(D) of their Memorandum, Defendants move for dismissal of the claims for False Arrest and Malicious Prosecution based on their assertion that probable cause did exist.  In addition, Defendants seek qualified immunity for the individual officers claiming qualified immunity at section IV(B).

These circumstances would permit a reasonable fact finder to consider whether Plaintiff's right turn without use of a signal was Off. Puorro's reason for the initial stop and to find that it was not. Such a finding would negate the Defendants' claim that probable cause, even arguably, existed for the stop. Off. Puorro followed Plaintiff for six-tenths of a mile at a speed of five to ten miles per hour on dark, empty roads. (MPD SR, Defs.' Mem., Ex. A at 1) (Pl.'s Dep. Tr., Defs.' Mem. Ex. B at 31) (CTB Aff. ¶¶ 4-5) If Off. Puorro's true reason for stopping Plaintiff had been a failure to use a turn signal in the late hours of the night, he would have stopped Plaintiff long before Plaintiff reached 79 Prospect Street. At the least, a genuine issue arises from Off. Puorro's claim that the stop was caused by an improper turn when a prolonged and uneventful period intervened between the improper turn and the eventual stop.[18]

### 2.    The Rear Marker Plate

There is a genuine issue of material fact concerning Off. Puorro's representation that he stopped Plaintiff after noticing that Plaintiff's rear license plate was not illuminated. (MPD SR, Defs.' Mem., Ex. A at 1) Plaintiff's 1989 Jeep, similar to other Jeep Wranglers of the same year and model, does not have a license plate light but relies on a transparent tail light housing to illuminate the license plate. (Compl. at ¶ 3) (Pl.'s Aff. ¶¶ 10) Thus there is a genuine issue of material fact as to whether or not Plaintiff's tail light was illuminated, and if it was not, then an issue exists regarding the cause for the stop.

### 3.    The Field Sobriety Tests

There is a genuine issue of material fact concerning the reasonableness and objective accuracy underlying Off. Puorro's recorded observations of Plaintiff's field sobriety tests. A trier of fact should be given the opportunity to evaluate: (1) the totality of circumstances surrounding the sobriety field tests; (2) the internal inconsistencies in Off. Puorro's records of

---

[18] See n. 9, 10, *supra*.

the field tests; and (3) the circumstances under which the prosecutor entered nolles to Plaintiff's

operating under the influence and other motor vehicle charges.

The reasonableness and objective accuracy of Off. Puorro's observations are, at the least,

diminished, and, at the most, negated, by (1) the volume and type of alcohol consumed by

Plaintiff; (2) Plaintiff's steady driving; (3) the injury to Plaintiff's eye and the other effects of a

previous assault upon Plaintiff; and (4) Plaintiff's blood alcohol content.   During a period of

approximately six and one half hours, Plaintiff consumed five or so bottles of Amstel Light

Beer.[19]  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 17-21) (Form A-44, Pl.'s LR 56(a)2 Statement,

Ex. 5 at 2)  Additionally, Plaintiff consumed his last bottle of beer an hour before being stopped.

(Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 23.)  Plaintiff consumed no hard liquor the entire night but

only light beer with an alcohol by volume measure of 3.5 percent.  (Pl.'s Dep. Tr., Defs.' Mem.,

Ex. B at 18-21) (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 2)  The length of time elapsed

over the evening prior to the stop at 79 Prospect Street and the amount of light beer consumed

contribute to the improbability that Plaintiff was operating under the influence of alcohol.  At the

very least, the low volume of alcohol consumed by Plaintiff creates a genuine issue of material

fact concerning the accuracy and consistency of Off. Puorro's field test observations.

As Plaintiff was able to drive at a slow and steady rate through a narrow residential road

without violating any traffic law except for turning right without a signal approximately five

minutes prior to Off. Puorro's decision to stop him, a reasonable trier of fact may infer that the

observations of Plaintiff's field sobriety tests recorded by Off. Puorro lack credibility.  (Pl.'s

Dep. Tr., Defs.' Mem., Ex. B at 31)  Plaintiff's only undisputed traffic violation is the failure to

signal a right turn at approximately1:00 A.M. when his Jeep was the only vehicle on the road.

---

[19] "Amstel Light is the #1 imported light beer in the United States. It features a unique selection of raw materials and
an intensive fermenting process. The result is a special light beer containing only 3.5% alcohol and approximately
35% fewer calories than regular lager beer - but is every bit as refreshing."  http://amstellight.com/main.php?url=

(Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 25.)  In fact, Plaintiff asserts to have driven at a steady pace, without committing any traffic violations while being followed by Off. Puorro.  (Pl.'s Aff. ¶¶ 5, 7)  Thus, it seems unlikely that someone: (1) who has consumed a relatively small amount of alcohol over six and one half hours and (2) whose sole undisputed traffic violation prior to being stopped and arrested was failing to use a turn signal at 1:00 A.M. on an empty road, would perform as poorly on sobriety field tests as Off. Puorro contends Plaintiff performed.  In brief, Plaintiff's lawful and uneventful operation of his Jeep creates a genuine issue of material fact concerning the accuracy and consistency of Off. Puorro's field test observations.

First, an assault Plaintiff suffered merely two days before being stopped by Off. Puorro negatively impacted his performance on the field sobriety tests.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at ) (Pl.'s Aff. ¶¶ 14-16)  Plaintiff's bruised right eye made the HGN test difficult.  (Pl.'s Aff. ¶¶ 14-15)  In addition, Plaintiff told Off. Puorro that his right leg was injured so that Plaintiff performed the One-Leg Standing test using his left leg.  Plaintiff is right-handed and therefore not as able using his left hand and left side in general.  (Pl.'s Aff. ¶¶  17)  If Plaintiff's bruised right eye and the assault do not negate the results of his field tests, at a minimum, they create a genuine issue of material fact regarding the accuracy and consistency of Off. Puorro's objective accuracy and reasonableness in his observations of the HGN test given that Off. Puorro and Off. Kerkes were aware of the injuries.  (MPD SR, Pl.'s LR 56(a)(2 Statement, Ex. 5 at 1)

Second, Plaintiff's low BAC readings contradict Off. Puorro's observations recorded in his Supplementary Report and Form A-44.  Plaintiff consumed a minimal amount of alcohol, merely forgot to signal a turn on an empty road at approximately 1:00 A.M., and drove in a slow and steady manner on a narrow one-way residential street while being observed by Off. Puorro and Off. Kerkes.  (Pl.'s Dep. Tr., Defs.' Mem., Ex. B at 17-21, 29-31)  (MPD SR, Defs.' Mem.,

Ex A)  These factors are consistent with the Plaintiff's BAC results.  Off. Puorro's record of his

observations is not consistent with the Plaintiff's BAC results and contradict the strongest and

most objective evidence on record, specifically Plaintiff's BAC results.  The totality of

circumstances, and especially when viewed in a light most favorable to Plaintiff, create a genuine

issue of material fact as to the objective accuracy and reasonableness of Off. Puorro's field test

observations.

Third, the various inconsistencies between his own Supplementary Report and Form A-

44 erode the credibility, accuracy, and consistency of Off. Puorro's observation, administration,

and perception of Plaintiff's sobriety field tests.  (MPD SR, Defs.' Mem., Ex. A) (Form A-44,

Pl.'s LR 56(a)2 Statement, Ex. 5)  A review of Off. Puorro's Form A-44 indicates a perfunctory

completion of the form.  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5)  A review of the "Type

of Test" and "Check Appropriate Boxes describing Condition Observed" column in the Form A-

44 show that Off. Puorro checked off every "Box."  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex.

5)  In his Supplementary Report, Off. Puorro states that during the Walking test, Plaintiff: (1)

lost his balance during the instructional phase; (2) started too soon; (3) raised his arms; (4) did

not walk heel to toe; (5) took an incorrect number of steps; (6) repeatedly stepped off the line; (7)

stopped to steady himself; and (8) turned incorrectly.  (MPD SR, Defs.' Mem., Ex. A)    In fact,

Off. Puorro claims that Plaintiff was unable to stand.  (MPD SR, Defs.' Mem., Ex. A)

In his Supplementary Report, Off. Puorro states that during the Standing test, Plaintiff:

(1) swayed; (2) raised his arms while struggling to maintain his balance; (3)  bent his knees; and

(4) put his foot down at the count of 2, 3, and 4.  (MPD SR, Defs.' Mem., Ex. A)  However in

contradiction to his Supplementary Report, Off. Puorro's Form A-44 states that during the

Standing test, Plaintiff: (1) swayed while balancing; (2) hopped; (3) used his arms for balance by

raising them over six inches; (4) could not perform the test because he put his foot down three times; (5) put his foot down; and (6) bent his knee.  (MPD SR, Defs.' Mem., Ex. A)  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5)  This second discrepancy lends further credence to the argument that Off. Puorro completed the Form A-44 report in a perfunctory and mechanical manner which casts additional doubt on the reasonableness and objective accuracy of his observations and records of Plaintiff's field sobriety tests.

Fourth, Off. Puorro alleges that Plaintiff was driving erratically in his Form A-44 Report, yet, makes no mention of this in his Supplementary Report.  (MPD SR, Defs.' Mem., Ex. A) (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5)  Once again, the totality of circumstances diminish the credibility and reliability of Off. Puorro's observations, recollection, and recording of Plaintiff's field sobriety tests.  Plaintiff: (1) consumed a minimal amount of alcohol; (2) contends that he drove at a slow and steady manner while being followed by the patrol car; and (3) had BAC readings of only .019 and .012.  Furthermore, had Plaintiff been driving erratically over a narrow, one-way, residential road, caution would have dictated that he be stopped immediately after failing to signal a turn as opposed to being followed for approximately five minutes over a measurable distance.  The totality of circumstances indicates that Off. Puorro seemingly filled out practically every "Box" in the Form A-44, rather than actually relying on an accurate perception of the traffic stop.  (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5)

Fifth, the inconsistencies in Plaintiff's stop and arrest are not confined to discrepancies in police records.  The actions of Off. Kerkes, Off. Puorro, and Sgt. Visconti reveal a lack of confidence in the administration, recollection, and recording of Plaintiff's field sobriety tests.  Following the field sobriety tests, Off. Puorro asked Plaintiff not to sue him.  (Pl.'s Aff. ¶ 25)  Off. Puorro did not ask Plaintiff to submit to a blood or urine test for the presence of drugs.

(Pl.'s Aff. ¶ 22)  The Supplementary Report completed by Off. Puorro and notarized by Sgt. Visconti allows for "follow up" action if the supervisor acting as a commanding officer requires. However, no follow up action was requested.  (MPD SR, Defs.' Mem., Ex. A)  If Off. Puorro, Off. Kerkes, and Sgt Visconti held Off. Puorro's field observations as credible and reliable, then they would have investigated further to find out what had caused the behaviors observed by Off. Puorro.  Instead, Plaintiff was released with no revocation of license such that, if his Jeep was not impounded, he could have driven away from the police station and been in no violation of the law.[20]

### 4.    The Nolles and Dismissal

The actions taken by the prosecutor in open court on March 15, 2001, create a genuine issue of material fact concerning both the existence of reasonable suspicion for the initial stop and probable cause for the arrest.  First, the prosecutor based the nolle of the OUI charge on Plaintiff's blood alcohol test results.  (March 15, 2001, Hr'g Tr., Pl.'s LR 56(a)2 Statement, Ex. 1 at 2)  In consideration of Off. Puorro's recorded observations of the field sobriety test results, the BAC test results did not mandate a nolle of the OUI charge.  From this, it may reasonably be inferred that the prosecutor chose not to proceed on the observations of Off. Puorro.  Second, the prosecutor nolled each of the motor vehicle charges that the Defendants assert constituted reasonable suspicion to initially detain the Plaintiff.  (Original Information, Pl.'s LR 56(a)2 Statement, Ex. 4)  Again, the prosecutor chose not to proceed on the motor vehicle charges alleged by Off. Puorro.

---

[20] General Statutes § 14-227b(c), in relevant part, provides:  "If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that such person has an elevated blood alcohol content, the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period."

The notice provision of the OUI statute assumes and mandates that a prosecutor's basis for entering a nolle to an OUI charge derives from the evidence gathered to support prosecution under sections (a)(1) and (a)(2) of General Statutes § 14-227a.  The evidentiary deficiency for the prosecutor in section (a)(2) is evident in Plaintiff's BAC test results.  The evidentiary deficiency for the prosecutor in section (a)(1) may be reasonably inferred to have been based in the unarguable fact that there was no reasonable suspicion for Plaintiff's stop and probable cause for his arrest, otherwise there is little if any explanation for the nolle and later dismissal of the OUI charge.

Finally, the Defendants acquiesced to the prosecutor's analysis of Off. Puorro's reasonable suspicion for the stop and probable cause for the arrest implicit in the nolle of all the OUI when the Defendants did not, as was their option, prepare a new warrant charging the Plaintiff with OUI based on the observations of Off. Puorro.  An OUI charge may be based solely on field sobriety tests and the evidenced gathered prior to placing a suspect under arrest. (Defs.' Mem. at 15-16 (citing Clynch v. Chapman, 285 F.Supp.2d at 226-27))  The fact that the Defendants did not prepare a new warrant within the statutory time period following the nolle on March 15, 2001, implies an admission that there was no basis to proceed on the OUI charge.

Finally, the actions by the Defendants and the prosecutor indicate a perfunctory manner in which OUI stops and arrests are conducted in the Town of Middletown.  The OUI statute and the Town of Middletown's policy on OUI arrests place primary emphasis on the field sobriety tests and observations of the law enforcement officer.  These results and observations form the basis for an arrest and are sufficient for an OUI conviction.  Conn. Gen. Stat. § 14-227a(a)(1); see Clynch, 285 F.Supp.2d at 226-27.  (Flow Chart, Pl.'s LR 56(a)2 Statement, Ex. 6)  The actions of the prosecutor implied that very little credit was given to the observations of Off.

Puorro. The Defendants' lack of action following the nolles and Notice of Intent to Sue implied the same. This was a predictable outcome, given the perfunctory manner in which Off. Puorro completed his Form A-44 and Supplementary Report, as well the numerous inconsistencies between the two records.[21]

        ii.  Standard for Summary Judgment in Malicious Prosecution and False
            Arrest Claims

      In sections IV(A) and (D) of their Memorandum, Defendants argue that the existence of probable cause for the arrest defeats Plaintiff's state common law claims for false arrest and malicious prosecution, respectively.[22] However, since there are genuine issues regarding many of the facts alleged by Off. Puorro to support his stop and arrest, Plaintiff's claims for false arrest and malicious prosecution in Counts One, Two, Three, and Seven of the Complaint do not fail.[23]

      The mere belief that a person is attempting to get out of the way of or "lose" a police officer does not justify a detention or arrest. In <u>State v. Milotte</u>, the arresting officer testified at a hearing on a motion to dismiss that she believed the defendant was attempting to elude her based on her observation that "the defendant who lived in Willimantic, traveled on streets and stopped briefly at locations where she believed that he had no nexus." 2004 Ct. Sup. 19720, 19725 38 CLR 509 (Dec. 30, 2004, Dyer, J.) The officer believed that Milotte was attempting to elude her. <u>Id.</u> Therefore she continued to follow Milotte for a considerable amount of time. <u>Id.</u> The area

---

[21] If the Defendants believed to any reasonable degree that Plaintiff had been operating under the influence they would have taken action to correct what they would have viewed as an oversight by the prosecutor and not simply allowed the charges to be nolled and later dismissed. For example, by analogy, a physician who remains silent after his or her patient seeks a second opinion and receives a contrary diagnosis based on a false premise implies that his own original opinion should not be relied upon by a prudent patient if he or she chooses to remain silent and not address the false premise with the or the second physician.

[22] Similarly, section IV(B) of the Defendants' Memorandum argues that not even "arguable" probable cause exists such that even if the Court were to find a lack of probable cause on the state common law claims, the Defendants would still have qualified immunity from the 42 U.S.C. § 1983 claims founded in the Fourth Amendment to the United States Constitution. Qualified immunity is discussed at section III(E), *infra*. Finally, in sections IV(C) and IV(E) of their Memorandum, the Defendants seek governmental immunity from state common law claims for false arrest and malicious prosecution based on the discretionary nature of the Defendants' actions. Governmental immunity is discussed at section III(E), *infra*.

[23] <u>See</u> n.2, *supra*.

had a high rate of driving under the influence incidents.  Id at 19722.  At no time was Milotte observed speeding, or otherwise operating in an unsafe manner.  Id.  The Milotte court ruled that the totality of circumstances did not justify an investigative detention or seizure.  Id.[24]

If there is a genuine issue of material fact pertaining to the totality of circumstances leading to an arrest, there can be no probable cause and summary judgment must be denied.  Kent v. Katz, 312 F.3d 568, 576 (2d Cir. 2002).  In Kent v. Katz, Officer Jared Katz ("Katz") responded to a complaint of fire and arrived at the property of Dean Kent ("Kent").  Id. at 570.  Kent and two associates had been burning brush there for the past few days.  Id.  Kent, who was away running errands, returned shortly after Katz arrived.  Id.  From this point onward, both sides gave differing versions of what transpired.

Katz stated that Kent's eyes were red, prompting him to ask whether or not Kent had been drinking.  Id.  Katz alleged that after initially denying consuming alcohol, Kent said "not very much."  Id.  Kent countered that his second response was sarcastic and that he had not consumed any alcohol that day.  Id.  Katz then allegedly observed: (1) slurred speech; (2) ocular irregularity in the form of red eyes; (3) an unsteady gait; and (4) the odor of alcohol.  Id. at 571.  Kent contested the aforementioned observations with affidavits to the contrary.  Id.  Furthermore the Court of Appeals for the Second Circuit found that Kent's ocular irregularity may have been due to the fact that he had been burning brush on his property for the past few days.  Id. at 576.  Kent was observed driving erratically by a witness other than Katz.  Id. at 572.  However Kent contended that he was not under the influence, rather he was driving as he did to convey a

---

[24] The facts in Milotte did not include an observation by the arresting officer of a motor vehicle violation prior to following the defendant.  However, as addressed in n.9, supra, the General Statutes § 54-1f, places in doubt whether Off. Puorro was actually stopping Plaintiff for an improper turn at Liberty and Main Streets.  In fact, in his Supplementary Report, Off, Puorro notes that he stopped Plaintiff after following him and noticing that Plaintiff's rear marker was not properly illuminated.  (MPD SR, Defs.' Mem., Ex. A at 1)  Plaintiff, of course, has testified that his rear marker was properly illuminated.  (Pl.'s Aff. ¶¶ 7-9)

message to a friend on the road in another vehicle.  Id. at 572-73.  Kent refused to take any

sobriety tests and was arrested for driving under the influence.  Id. at 571.  A state court found

probable grounds for his arrest, thus, Kent's suit against Katz for wrongful arrest was dismissed

in a motion for summary judgment by the United States District Court for the District of

Vermont and Katz was found to have qualified immunity.  Id. at 570.

       The Second Circuit concluded that it would be inappropriate to grant summary judgment

because there were genuine issues of material fact regarding probable cause for Kent's arrest.  Id.

at 576.  The court reasoned that since Kent presented affidavits to contradict the assertions by

Katz, the only undisputed fact leading to the arrest was that Kent had redness in his eyes.  Id.

The Second Circuit stated that the redness in Kent's eye could have been due to the fact that he

had been burning brush on his property for the past few days.  Id.  Thus, given the totality of

circumstances, there had been no probable cause for Kent's arrest.  Id.

       Assuming, for the sake of argument, that Off. Puorro had reasonable suspicion to stop

Plaintiff, there still is a genuine issue of material fact as to whether he had probable cause for

arrest.  Plaintiff's field sobriety tests are contradicted to the point where they no longer provide

the basis for probable cause.

       In further support of Plaintiff's claims in the instant matter, Plaintiff's claims are

favorably distinguishable from those in Kent v. Katz.  Kent refused to take field sobriety tests

and was seemingly less than cooperative with Katz.  Id. at 571.  However, even without the

benefit of contradictory breath test results, the Second Circuit affirmed the district court's denial

of the defendants' summary judgment due to a genuine issue of material fact concerning

probable cause.  Id. at 576.  Kent v. Katz serves as particularly compelling precedent.  Even if

Plaintiff, unlike Kent, produces no other affidavits from witnesses, the totality of circumstances

surrounding his arrest and the actions of the defendants thereafter fall under the guidance of <u>Kent v. Katz</u>. The totality of circumstances surrounding Plaintiff's stop and arrest combined with his BAC readings, the actions of the prosecutor, and the Defendants' post-arrest actions provide an evidentiary basis for denial of summary judgment far stronger than the one set forth in <u>Kent v. Katz</u>.

iii.     Analysis of Case Law Cited by Defendants

In <u>Ritz v. Breen</u>, No. 3:99-cv-2267(CFD) (D. Conn. Mar. 11, 2002) (Westlaw, Defs.' Mem., Ex. D), the manager of a McDonald's restaurant observed Jill E. Ritz ("Ritz"): (1) hit a speaker in the drive through; (2) brush another car in the drive through; and (3) knock over a trash container. Officer Michael Breen ("Breen") responded to a call from the manager and observed Ritz cross a center line into the lane for oncoming traffic, almost hit another car, and fail to stop at a stop sign.

Ritz did not admit to consuming alcohol but told Breen that she had neglected to take her prescribed medication. Furthermore, when asked if she consumed alcohol, she blew a heavy breath into Breen's face. Breen observed that: (1) Ritz's speech was thick and slow; (2) her eyes were bloodshot and red; and (3) she was shaking very badly and was unsteady while walking. Ritz countered that: (1) her speech was not thick and slow; (2) her eyes were not bloodshot and red; and (3) her unsteady gait and shakiness were a product of high-heeled shoes and nervousness. Ritz's breath test did not register alcohol so Breen ordered a urine test which later revealed Valium. Due to the totality of facts, Defendants were granted summary judgment for qualified immunity.

<u>Ritz</u> is distinguishable from the case at bar and thus cannot be used to support summary judgment in the instant case. First, Plaintiff, in the instant case, provided no indication that he

24

was under the influence of any illegal narcotic substance and denies it now.  (Pl.'s Aff. ¶ 24)

(MPD SR, Defs.' Mem., Ex. A)  Second, Plaintiff's driving activity was not erratic as opposed to

that of Ritz.  Ritz demonstrates that Off. Puorro, Off. Kerkes, and Sgt. Visconti knew or should

have known that they could have ordered a drug test after arresting Plaintiff.  They chose not to,

instead Off. Puorro released Plaintiff and asked him not to file suit.  (Pl.'s Aff. ¶ 25)

In Newby v. Town of Cromwell, 25 F. Supp. 2d 56 (D. Conn. 1998), the plaintiff Ernest

Newby ("Newby") pulled over at the side of the road to speak with the occupants of another car.

Id. at 57.  Newby had consumed two beers prior to stopping and once he stopped at the side of

the road he activated his blinkers.  Id.   A police officer noticed Newby's car and another car

parked on the side of the road and stopped.  Newby admitted to the police officer that he had

consumed two beers.  Id.  DiMiao's inquiry came after he detected an odor of alcoholic

beverages.  Id.

Newby was then asked to perform various field sobriety tests, including the HGN,

Walking, and Standing tests as well as counting backwards and reciting the alphabet.  Id.  The

police officer asserted that Newby was unable to count backwards from 64 to 59 and could not

recite the alphabet.  Id. at 57.  Newby did not recall whether or not he passed the sobriety tests.

Id.  The court stated only that Newby's BAC was below .10.  Id.

Summary judgment in Newby was granted based on the following factors: (1) Newby

was at the side of the road at 1:00 A.M. on a Wednesday morning; (2) he smelled of alcohol; (3)

his eyes were glassy and red; (4) he had been drinking beer; and (5) he failed every field sobriety

test.  Id. at 58.  The court noted further that Newby did not submit any evidence to create a

genuine issue of material fact.  Id.

The Newby decision cannot be applied to the instant case. Its facts do not reveal the plaintiff's BAC, instead the decision merely states that his BAC was below .10 both times it was tested. Newby, 25 F. Supp. 2d at 57. In the instant case, the BAC test results were .019 and .012, respectively, both well below the legal limit. (MPD SR., Defs.' Mem., Ex. A) (Form A-44, Pl.'s LR 56(a)2 Statement, Ex. 5 at 2) Thus, they form the basis of a genuine issue of material fact regarding the validity of the field sobriety tests. Furthermore, the BAC test results undermine the credibility of Off. Puorro's observations before, during, and after stopping Plaintiff. Only a trier of fact would be in the position to examine and access the primary factor for consideration in this case, Off. Puorro's credibility.

In Clynch v. Chapman, 285 F. Supp. 2d 213 (D. Conn. 2003), the plaintiff, Clynch, was stopped by a police officer after consuming two beers in the course of an hour. Id. at 216. The police officer alleged that Clynch (1) was weaving in his own lane; (2) crossed a solid white line at least three times; and (3) crossed into the neighboring lane of traffic. Id. Conversely, Clynch asserted that he obeyed all traffic laws and was driving steadily. Id.

The police officers reported observing (1) slurred speech; (2) bloodshot and glassy eyes; and (3) the odor of alcohol. Id. at 216. They also asserted that Clynch failed all three field sobriety tests usually administered, while Clynch himself disputed some of the officers' accounts of the field sobriety tests. Id. at 217. Clynch was arrested and his BAC test results, taken thirty minutes apart were .061 and .056 respectively. Id.

At his state court appearance regarding the operating under the influence charge arrest, Clynch's lawyer accepted a nolle with the corresponding acknowledgment of probable cause. Id. at 217-18. Clynch however maintained that he never authorized his lawyer to admit probable cause while entering a nolle. Id.

In Clynch, the court held that an operating under the influence charge may be predicated on a driver's behavior even when his BAC is not elevated.  Id. at 226-27.  However the defendant was denied summary judgment on Clynch's claims of: (1) unreasonable stop; (2) malicious prosecution; (3) corollary Connecticut State Constitutional claims; and (4) the intentional infliction of emotional distress.  Id. at 230.

"[A] DUI conviction may be predicated on a driver's behavior even if the driver's BAC rating falls below ten-hundredths of one per cent."  Clynch, 285 F. Supp. 2d at 226-27 (applying State v. Gonzalez, 210 Conn. 446, 556 (1989); State v. Pulaski, 71 Conn. App. 497, 501-505, (2002)).  However, the court in Clynch reasoned that:

> If the jury credits Clynch's story of appropriate driving conduct and concludes that Chapman's stopping Clynch violated his Fourth Amendment rights, the jury could consistently conclude that no officer could have acted in an objectively reasonable manner in charging Clynch with an offense the Off. knew could not succeed for lack of admissible evidence. As such, defendants are not entitled to summary judgment on Clynch's malicious prosecution claim at this time.

Id. at 228-29.

Clynch is distinguishable from the instant case in two primary regards.  First, Clynch's blood alcohol readings were .061 and .056.  Clynch, 285 F. Supp. 2d at 217.  These readings were approximately five times greater than Plaintiff's BAC test results.  Second, Clynch's attorney acknowledged probable cause, while Plaintiff was not asked to and did not when he was in court.  (March 15, 2001, Hr'g Tr., Pl.'s LR 56(a)2 Statement, Ex. A at 2)  Notwithstanding, the higher BAC test results in Clynch, the court held that there was a genuine issue of material fact and denied summary judgment on the unreasonable stop and malicious prosecution claims.

C. The Town of Middletown's Policies and Customs Proximately Caused the
Deprivation of Plaintiff's Constitutional Rights Guaranteed Under the United States
Constitution

The Town of Middletown adopted a policy and custom that prevented its police

officers within the Middletown Police Department from charging an arrestee based on all the

evidence gathered in the course of an investigation for driving while under the influence.  In its

Memorandum, the Defendants cite General Statutes § 14-227a(f) to assert that a driving while

under the influence charge "may not be reduced or dismissed by the arresting officers."  (Defs.'

Mem. at 14)  However, section 14-227a(f) actually provides, in relevant part:  "[T]he charge may

not be reduced, nolled or dismissed unless the prosecutor states in open court such prosecutor's

reasons for the reduction, nolle or dismissal."[25]  (Flow Chart, Pl.'s LR 56(a)2 Statement, Ex. 6)

As followed by Off. Puorro, Off. Kerkes, and Sgt. Visconti, the Town of Middletown's policy

had untenable consequences.   According to the Town's policy and custom, no matter what

evidence the arresting officers gathered following their seizure and arrest of Plaintiff, the officers

had no discretion but to charge Plaintiff with operating under the influence and send him to

court.  This is contrary to the Defendants' argument that police officers are entitled to qualified

and governmental immunity based on the discretionary nature of their duties.  There is no law

that requires a police officer in the state of Connecticut to charge a person with an offense simply

because the person was placed under arrest for suspicion of the offense, especially when addition

information exculpates the person.[26]  The Defendant Town's adoption of such a position was a

direct cause of Off. Puorro's, Off. Kerkes's, and Sgt. Visconti's violation of Plaintiff's civil

rights.

---

[25] See n.3, *supra*.

[26] See Castillo v. City of Hobbs, Civ. No. 00-1417 JP/LCE-ACE (D. N.M. 2001) ("[A] police officer is not bound to
issue a citation to every offender each time the officer makes an arrest for a violation of the Motor Vehicle Code. A
police officer has discretion not to charge an arrested person for violating the Motor Vehicle Code and may release
the person from custody without issuing a citation, just as happened here.")  (Case, Pl.'s LR 56(a)2 Statement, Ex. 9)

D.  Plaintiff Sets Forth a *Prima Facie* Claim of Libel *Per Se*

In sections IV(G) and IV(I) of their Memorandum, Defendants argue that Plaintiff has failed to allege facts which satisfy the essential elements of a libel *per se* claim.[27]

> Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.

Lyons v. Nichols, 63 Conn. App. 761, 767-68, cert. denied, 258 Conn. 906 (2001).  A written statement charging a crime or violation of the law constitutes libel *per se*.  Id.  If no probable cause existed for Plaintiff's arrest then the statement that Plaintiff was arrested, which implies that the arrest was lawful, is false.  Off. Puorro, Off. Kerkes, and Sgt. Visconti knowingly allowed such false charges to be stated in a public record subject to the state's Freedom of Information Act (FOIA), Conn. Gen. Stat. § 1-210 et seq.  (Defs.' Interrogs. Res. Nos. 9-10, Pl.'s LR 56(a)2 Statement, Ex. 7)  Plaintiff's arrest was subsequently printed on or about March 2, 2001, in the "Police Blotter" of *The Middletown Press*.  (Police Blotter, Pl.'s LR 56(a)2 Statement, Ex. 7) (Pl.'s Aff. ¶ 27)  The newspaper article upset Plaintiff and caused emotional distress.  (Pl.'s Aff. ¶ 28)  Plaintiff was concerned about his business and the impact that the arrest would have on his reputation in the community and among the people he knows, including his customers and relatives.  (Pl.'s Aff. ¶¶ 29, 30)

---

[27] In section IV(G) of their Memorandum, Defendants assert a governmental immunity defense on behalf of the Town.  The defense of governmental immunity is addressed at section III(E), *infra*.

E.  Defendants Are Not Protected By the Doctrines of Qualified or Governmental
    Immunity From Plaintiff's Claims

i.  Qualified Immunity

In assessing the evidence in the light most favorable to Plaintiff, a trier of fact could find

that (a) it was not objectively reasonable for Off. Puorro to stop and detain Plaintiff for an

improper turn that occurred five minutes and at least six-tenths of a mile prior to the stop and

detention; (2) it was not objectively reasonable for Off. Puorro to arrest Plaintiff for OUI; and (3)

it was not objectively reasonable for Off. Puorro, Off. Kerkes, and Sgt. Visconti to charge the

Plaintiff with OUI after they completed the investigation.  In their Memorandum, Defendants

assert that the individual Defendants need only "arguable probable cause" for qualified immunity

and such cause exists "when a reasonable police officer in the same circumstances, and

possessing the same knowledge as the officer in question, could have reasonably believed that

probable cause existed in the light of well established law."  (Defs.' Mem. at 19)  When Off.

Puorro had the opportunity to "argue" that probable cause did in fact exist after the charge was

dropped by the prosecutor he did not and neither did the Town or the other Defendants.  The

stop, arrest, and charge were subjectively unreasonable, as may be inferred from the Defendants'

failure to act to reinstate the OUI charge by a new warrant, and objectively not reasonable as

well.  Therefore, the individual Defendants should not be granted qualified immunity.

ii.  Governmental Immunity

General Statutes § 52-557n(a) provides, in relevant part:

> (1) Except as otherwise provided by law, a political subdivision of
> the state shall be liable for damages to person or property caused
> by: (A) The negligent acts or omissions of such political
> subdivision or any employee, officer or agent thereof acting within
> the scope of his employment or official duties. . . . (2) Except as
> otherwise provided by law, a political subdivision of the state shall
> not be liable for damages to person or property caused by: (A) Acts
> or omissions of any employee, officer or agent which constitute

> criminal conduct, fraud, actual malice or wilful misconduct; or (B)
> negligent acts or omissions which require the exercise of judgment
> or discretion as an official function of the authority expressly or
> impliedly granted by law.

The Town asserts the defense of governmental immunity in sections IV(C), IV(E), and IV(I) and

argues that the second exception to General Statutes § 52-227n(a) releases the Town of liability

for Plaintiff's false arrest, libel, malicious prosecution, and emotional distress state common law

tort claims.  The second exception ("discretionary function exception") does not apply for three

reasons:

First, in stops and arrests for OUI, a specific form, the Form A-44, is required by the

State of Connecticut, Department of Motor Vehicles (DMV), for use by every peace officer in

pursuing an OUI investigation.  The Form A-44 sets forth specific tests, questions, and

procedures that if not specifically followed result in the return of a suspended license to the

operator and the inadmissibility of BAC test results.[28]  In completing a Form A-44, peace

officers perform a ministerial act and the misperformance of that act divests the Town of

governmental immunity.

Second, in administering the BAC tests, peace officers in the state of Connecticut

follow specific statutory procedures mandated by General Statutes §§ 14-227a and 14-227b.  The

administration of such a test to a person who has been detained and arrested without probable

cause is a misperformance of the statutory guidelines.  In fact, following an administrative

hearing at the DMV, if a hearing officer finds that probable cause did not exist for the arrest then

---

[28] See Conn. Gen. Stat. §§ 14-227a, 14-227b.  General Statutes § 14-227b(c) provides, in relevant part:  "The police officer shall prepare a written report of the incident and shall mail the report and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall be made on a form approved by the Commissioner of Motor Vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer."

the person's license is restored no matter the BAC.[29]  In administering these tests, the peace officers perform a ministerial act and the misperformance of that act divests the Town of governmental immunity.

Third, the state FOIA statutes require that arrest records, as matters of public record, be subject to disclosure."  (Defs.' Interrog. Res. Nos. 9-10, Ex. 7)  Therefore, the disclosure of the arrest records is not a discretionary but a ministerial act for which the Defendants' misperformance divests the Town of governmental immunity.

An OUI arrest, unlike other arrests that are discretionary, is subject to mandatory arrest procedures and factors for observation.  When such an arrest is not supported by probable cause because there was a misperformance of the ministerial act required by the applicable OUI statutes, the harm to an arrestee is compounded by the mandatory FOIA statutes that require the disclosure of the record of arrest to the public.  This FOIA disclosure is a ministerial act as well for which the misperformance, specifically, maintaining arrest records that are false because they are not supported by probable cause, divests the Town of governmental immunity.

## IV.    CONCLUSION

Plaintiff contends that (1) the reasonable suspicion and probable cause claimed by Defendants is negated by the facts as well as the credibility of the arresting officer's observations and actions following the arrest; (2) the Town of Middletown had a policy that prevented arresting officers from charging an arrestee based on all the evidence gathered in the course of an investigation for driving while under the influence; (3) a *prima facie* case of libel *per se* exists;

---

[29] General Statutes § 14-227b(g) provides, in relevant part:  "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle."
General Statutes § 14-227(h) provides, in relevant part:  "If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege."

and (4) the absence of even arguable probable cause and the misperformance of ministerial acts

divest the Defendants of qualified as well as governmental immunity.  For the foregoing reasons,

including the facts and arguments of law set forth in this memorandum, accompanying affidavits,

and exhibits, Plaintiff opposes Defendants' motion for summary judgment as to Counts One

through Four and Six through Eight.

PLAINTIFF
JOSEPH R. BRANCIFORTE

BY:     /s/ Rachel M. Baird_____
Rachel M. Baird
(ct12131)
Law Office of Rachel M. Baird
379 Prospect St
Torrington CT 06790-5239
Tel:  (860) 626-9991
Fax:  (860) 626-9992
E-mail:  bairdlawoffice@aol.com


_____
Siddharth Fernandes
Legal Intern
Law Office of Rachel M. Baird
379 Prospect St
Torrington CT 06790-5239
Tel:  (860) 626-9991
Fax:  (860) 626-9992

## CERTIFICATION

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Memorandum of Law in

Opposition to Motion for Summary Judgment, dated June 20, 2005, was mailed, first-class,

postage paid on June 22, 2005, to counsel of record, as follows:

Beatrice S. Jordan, Esq.
Howd & Ludorf
65 Wethersfield Ave
Hartford CT 06114-1102


/s/ Rachel M. Baird_____
Rachel M. Baird
Commissioner of the Superior Court