UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH R. BRANCIFORTE | : | NO.: 3:02CV928 (AVC) |
| v. | : | |
| TOWN OF MIDDLETOWN, ET AL | : | AUGUST 8, 2005 |

**REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, the defendants hereby submit their reply to the Plaintiff's Memorandum in Opposition to Motion for Summary Judgment dated June 20, 2005.

In his opposition to the defendants' summary judgment motion, the plaintiff argues as follows: (1) the reasonable suspicion for the initial stop and probable cause to arrest is negated by the facts and credibility of the defendants; (2) the Town had a policy which prevented arresting officers from charging an arrestee based on all evidence gathered in the course of an investigation for operating under the influence; (3) that the plaintiff has set forth a prima facie claim of libel per se; and (4) the absence of arguable probable cause and misperformance of a ministerial duty divest the defendants of qualified and governmental immunity in this matter. (See Plaintiff's Memorandum in Opposition, at p.5.) The plaintiff does not contest the granting of summary judgment in favor of the defendants with regard to Count Five of the complaint alleging intentional infliction of emotional distress. (See Plaintiff's Memorandum in Opposition, at p.2, n.2.) The defendant will address each of the plaintiff's remaining claims in turn.

**I.    THE PLAINTIFF DOES NOT ESTABLISH A GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF REASONABLE SUSPICION FOR THE INITIAL STOP OF HIS VEHICLE**

The plaintiff first argues in opposition to the summary judgment motion that a genuine issue of material fact exists as to whether Officer Puorro initially stopped the plaintiff for the failure to use a right turn signal. (See Plaintiff's Memorandum in Opposition, at p.13.) In support of this contention, the plaintiff argues that Officers Puorro and Kerkes allegedly followed him for approximately five minutes before effectuating the stop, during which time the plaintiff allegedly obeyed all traffic laws, thereby evidencing the existence of a genuine issue of material fact as to whether the defendants initially stopped his vehicle for the improper turn. (See Id., at pp.13-14.) The plaintiff further argues that the fact that Officer Puorro's report indicates that he stopped the plaintiff after observing that the rear license plate was not illuminated is additional evidence as to an issue of material fact regarding the basis of the stop. (See Id., at p.14.)

However, the plaintiff does not dispute that he did, in fact, proceed to take a right-hand turn without engaging his right turn signal. (See Plaintiff's Rule 56(a)2 Statement, at p.3, ¶3; Branciforte Deposition, Exhibit B to Defendants' Motion for Summary Judgment, at pp.25, 27.) Likewise, the plaintiff does not dispute that, pursuant to Conn. Gen. Stat. §14-242, the operator of a vehicle must engage the appropriate turn signal prior to turning their vehicle. See Conn. Gen. Stat. §14-242(a).

The defendants' observance of the traffic violation, regardless of whether there was no other traffic on the road at the time of the infraction, created a specific and articulable fact sufficient to give rise to probable cause to stop the plaintiff. See U.S. v.

2

Scopo, 19 F.3d 777, 781-82 (2d Cir. 1994). Nonetheless, the plaintiff argues that a genuine issue of material fact exists as to the actual basis for the stop in light of the alleged five minute period of time in which the defendants followed him. The fact that the defendants chose to wait to stop the plaintiff does not negate the fact that the defendants directly observed the plaintiff violate the traffic laws in making the improper right turn, thus affording probable cause to stop his vehicle. See U.S. v. Scopo, 19 F.3d at 782.

     The plaintiff further argues that Officer Puorro represents in his report that the reason for the stop was that he observed the plaintiff's rear license plate as not being illuminated, and that an issue of fact exists as to whether the plaintiff's rear license plate was, in fact, illuminated. (See Plaintiff's Memorandum in Opposition, at p.14.) Curiously, the police report does not state that the basis, let alone sole basis, for the stop of the plaintiff's vehicle was the observation that the rear license plate was not illuminated. Rather, the report sets forth the chronology of events leading up to the stop, namely that: (1) Officer Puorro was monitoring traffic in the subject location, (2) he observed the plaintiff make an improper turn, (3) he proceeded to follow the plaintiff, (4) he noticed that the rear license plate was not illuminated, and (5) he ultimately stopped the plaintiff's vehicle on Prospect Street. (See Supplementary Police Report, Exhibit A to Defendants' Motion for Summary Judgment.) In any event, once the defendants had probable cause to stop the plaintiff based upon their direct observation of the improper turn, the defendants' additional reasons for stopping the vehicle, whether accurate or pretext, do not eliminate the probable cause for the stop. Specifically,

> [the] focus [is] not on whether a reasonable officer "would" have stopped the suspect . . . , or whether any officer "could" have stopped the suspect . . . , but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop.

U.S. v. Scopo, 19 F.3d at 784 (adopting the above "authorization" test set forth in the Sixth Circuit Court's ruling in U.S. v. Ferguson, 8 F.3d 385 (6th Cir. 1993)).

Accordingly, there exists no genuine issue of material fact that the defendants had probable cause to stop the plaintiff's vehicle based upon their direct observation of the plaintiff's improper turn.

**II.     THE PLAINTIFF DOES NOT ESTABLISH A GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF PROBABLE CAUSE FOR HIS ARREST**

In his opposition to the summary judgment motion, the plaintiff argues that a genuine issue of material fact exists as to the reasonableness and accuracy of Officer Puorro's observations of the plaintiff during the field sobriety test. (See Plaintiff's Memorandum in Opposition, at p.14). In support of this contention, the plaintiff argues that the type of alcohol he consumed, his steady driving, his prior right eye injury and his blood alcohol test results negate the reasonableness and accuracy of the defendants' observations. (See Id., at p.15.) Finally, the plaintiff argues that the prosecutor's nolle of the charges is further evidence of the absence of reasonable suspicion for the initial stop and probable cause to arrest him. (See Id., at p.19.)

Contrary to the plaintiff's assertions, in order to establish probable cause for an arrest, an officer need only establish "a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983). Thus, "probable cause does not require an officer to be certain that

4

subsequent prosecution of the arrestee will be successful." Krause v. Bennett, 887 F.2d 363, 371 (2d Cir. 1989); Curley v. Suffern, 268 F.2d 65, 70 (2d Cir. 2001). Once police officers possess facts sufficient to establish the existence of probable cause, they are not required or permitted to sit as a prosecutor, judge or jury. See Id., at 372. Rather, "[t]heir function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Id.

Moreover, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 125 S.Ct. 588, 593 (2004). Accordingly, "[w]hen determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." Caldarola v. Calabrese, 298 F.3d 156, 162 (2002).

In the instant matter, the undisputed facts demonstrate that the defendants possessed probable cause, and at a minimum arguable probable cause, to arrest the plaintiff. The following are the material, undisputed facts available to the defendants at the time of the arrest:

1.  The plaintiff made an improper right turn without engaging his turn signal. (See Plaintiff's Rule 56(a)2 Statement, at p.3, ¶3.)

2.  The plaintiff was aware that police were following his vehicle. (See Plaintiff's Rule 56(a)2 Statement, at p.3, ¶6.)

3.  The plaintiff began taking various random turns in an attempt to lose the police. (See Plaintiff's Rule 56(a)2 Statement, at p.4, ¶7.)

4.  There was an odor of alcohol within the Jeep. (See Affidavit of Joseph Branciforte, attached to Memorandum in Opposition, at ¶20.)

5

5. Upon inquiry, the plaintiff advised the defendants that he and his passenger had been to a couple of bars and had a couple of drinks. (See Plaintiff's Rule 56(a)2 Statement, at p.4, ¶10.)

6. While the plaintiff recalls performing a reverse counting tests, he does not recall his results. (See Plaintiff's Rule 56(a)2 Statement, at p.5, ¶14.)

7. While the plaintiff recalls performing an alphabet test, he does not recall his results. (See Plaintiff's Rule 56(a)2 Statement, at p.6, ¶16.)

8. The plaintiff did not pass the walk and turn test, and lost his balance and stepped off the line while performing the same. (See Plaintiff's Rule 56(a)2 Statement, at p.7, ¶20.)

9. The plaintiff did not pass the one-leg stand test, and could not keep his leg up for the time required while performing the same. (See Plaintiff's Rule 56(a)2 Statement, at p.7, ¶22.)

Despite the above undisputed facts, the plaintiff argues that the defendants lacked probable cause to arrest him. Although the plaintiff argues that he probably failed several of the tests because he was tired, he did not advise the defendants that his alleged tiredness was affecting his ability to perform the tests at the time he did so. In fact, the plaintiff concedes that he only advised the defendant as to the injury to his right eye and difficulties with his knee, and did not mention his tired state as having an effect on his performance or any other inability to perform the tests. (See Deposition of Joseph Branciforte, attached as **Exhibit A**, at p.52, ln. 9-23.)

The plaintiff further argues that the subsequent nolle of the charges against him is further evidence that probable cause for the initial stop and his subsequent arrest was lacking. However, a subsequent nolle of the charges is irrelevant to the determination of whether the defendants had probable cause for the stop and arrest thereby affording them qualified immunity. As indicated above, "probable cause does

not require an officer to be certain that subsequent prosecution of the arrestee will be successful." Krause v. Bennett, 887 F.2d 363, 371 (2d Cir. 1989); Curley v. Suffern, 268 F.2d 65, 70 (2d Cir. 2001). Moreover, the Second Circuit has consistently held that an officer's mistaken belief that probable cause exists does not eliminate the applicability of qualified immunity as a defense from suit. Specifically,

> Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution . . . . Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.

Caldarola, 298 F.3d at 162 (internal citations omitted; internal quotations omitted).

Accordingly, there exists no genuine issue of material fact that the defendants had probable cause to arrest the plaintiff based upon their direct observations, the plaintiff's admissions of consuming alcohol, the odor of alcohol emanating from the vehicle, and the plaintiff's failure of several of the field sobriety tests. The defendants are therefore entitled to qualified immunity as a matter of law.

### III. THE PLAINTIFF HAS FAILED TO STATE A LEGALLY COGNIZABLE MONELL CLAIM AGAINST THE CITY OF MIDDLETOWN

In his opposition, the plaintiff argues that the defendant City adopted a policy and custom which prevented its officers from charging an arrestee based upon all evidence gathered during the course of an investigation for driving under the influence. (See Plaintiff's Memorandum in Opposition, at p.28.) In support of this contention, the plaintiff simply makes the conclusory statement that the defendant's reference to Conn. Gen. Stat. §14-227a(f) and the defendant's flowchart regarding DWI paperwork completion evidences such a policy. (See Id., at p.28.) The plaintiff provides no

evidence which tends to demonstrate the existence of any policy or custom which was adopted by the defendant as alleged, let alone how any such policy or custom caused the constitutional violations alleged.

In order to state a claim against a municipality pursuant to §1983, a plaintiff must: (1) prove the existence of a municipal policy or custom, the exercise of which caused a deprivation of the plaintiff's rights; and (2) establish an affirmative link between the policy and the alleged constitutional violation. See Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985). In the instant matter, the plaintiff offers no evidence proving the existence of any policy by the defendant which affirmatively resulted in a violation of his constitutional rights. Rather, the plaintiff attempts to impute a policy to the City based upon the defendant's legal argument that only a prosecutor may reduce, nolle or dismiss charges under Conn. Gen. Stat. §14-227a once the charge has been made. Likewise, the plaintiff attempts to impute a policy to the defendant based upon a flowchart which outlines the paperwork to be filled out in DWI arrests.

In addition, the plaintiff has wholly failed to establish that the alleged policy in fact resulted in the alleged deprivation of his constitutional rights. The plaintiff's entire argument is premised upon his belief that the subsequent investigation, namely his blood alcohol test results, demonstrated that he was not operating under the influence of alcohol. However, a violation of Conn. Gen. Stat. §14-227a(a), the provision under which the plaintiff was charged in the instant matter, does not require any evidence of blood alcohol content as necessary to support the charge or a conviction. See Clynch v. Chapman, 285 F.Supp.2d 213, 226-27 (D. Conn. 2003). Accordingly, a DUI conviction may be predicated on a driver's behavior even if the driver's BAC rating falls

below ten-hundredths of one per cent. See Id. Thus, even though the plaintiff's blood alcohol tests taken subsequent to his arrest demonstrated that his blood alcohol content was below the legal limit, that additional investigation is irrelevant to the charge against him, namely a violation of the behavioral provision set forth in Conn. Gen. Stat. §14-227a(a). The plaintiff, therefore, does not, and cannot, establish that the policy alleged was causally related to the alleged constitutional violations.

In addition, the plaintiff wholly fails to allege or proffer any proof as to any deficiency in the defendant's training of its police officers, and how any such training actually caused the alleged constitutional violations. Where a plaintiff fails to offer any evidence "as to the purported inadequacies in the Town's training program and the causal relationship between those inadequacies and the alleged constitutional violations," summary judgment is appropriate. See Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004).

Likewise, the plaintiff wholly fails to proffer any evidence of deliberate indifference on the part of the defendant in the supervision of its officers. Specifically, the plaintiff proffers no evidence that "the need for more or better supervision to protect against constitutional violations was obvious," or that "no meaningful attempt" was made by the defendant to forestall or prevent the alleged unconstitutional conduct. See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

Accordingly, the City of Middletown is entitled to judgment as a matter of law as to the Seventh Count of the Complaint.

### IV. THE PLAINTIFF FAILS TO STATE A LEGALLY COGNIZABLE CLAIM OF LIBEL PER SE

The plaintiff argues that he has properly stated a claim for libel per se as the alleged false statement regards the charging of a crime or violation of the law, and he is, therefore, not required to plead and prove the elements of his libel and/or defamation claim. (See, Plaintiff's Memorandum in Opposition, at p.29.)

The plaintiff's claim, however, does not fall within the parameters of a libel per se claim. Specifically, "[t]o fall within the category of libels that are actionable per se because they charge a crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." Gambardella v. Apple Health Care, Inc., 86 Conn. App. 842, 850-51 (2004). A crime involving moral turpitude is defined as one which "involves an act of inherent baseness, vileness or depravity in the private and social duties." Moriarty v. Lippe, 162 Conn. 371, 383 (1972) (holding that assault lacks the element of moral turpitude). Accordingly, the plaintiff's claim does not amount to libel per se as it does not involve an act of moral turpitude or one in which an infamous penalty is attached.

Moreover, as indicated above and in the defendants' summary judgment motion, the plaintiff is unable to establish the required elements of his libel and defamation claim as he cannot establish that the charges against him were false or that there was in fact an injury to his reputation. In addition, there is no dispute that the defendants did not publish the charges to a third-party. Rather, the charges are a matter of public record pursuant to Conn. Gen. Stat. §1-210.

The defendants are, therefore, entitled to judgment as a matter of law as to the plaintiff's libel and defamation claims set forth in the Fourth and Eighth Counts of the Complaint.

### V. THERE EXISTS NO GENUINE ISSUE OF MATERIAL FACT THAT THE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY

Finally, the plaintiff argues that the defendants are not entitled to governmental immunity as the conduct alleged does not amount to a discretionary function, but rather involves the misperformance of various alleged ministerial duties. (See Plaintiff's Memorandum in Opposition, at pp.30-32.) Specifically, the plaintiff alleges that completion of the Form A-44, administration of the breathalyzer tests, and disclosure of records under the Freedom of Information Act (FOIA) are ministerial duties. (See Id.)

Curiously, the plaintiff fails to cite to any Connecticut precedent which supports his contention that the defendants' decision regarding whether an arrest is to be made or how to conduct an investigation involves a ministerial duty. On the contrary, the Connecticut Supreme Court has held that the very act of policing the community and investigating those who break the law is a discretionary governmental function protected by the doctrine of governmental immunity. See Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 180-81 (1988). Moreover, the Connecticut superior courts have, likewise, consistently held that the determination of when to make an arrest, or the manner in which to conduct an investigation involves discretionary acts. (See Exhibits F-J of Defendants' Motion for Summary Judgment.)

Nonetheless, the plaintiff argues that the defendants were engaged in a ministerial duty in completing the Form A-44 and administering the breathalyzer test.

However, the completion of the Form A-44 necessarily involves the officers' observations and judgment as to whether the plaintiff satisfactorily completed and/or passed the field sobriety tests administered. In fact, it was the defendants' determination that the plaintiff had violated the law based upon their observations of the plaintiff, and their judgment that the plaintiff failed several of the field sobriety tests. These are the very acts which are protected by governmental immunity. See Gordon, supra.

Moreover, the plaintiff proffers no evidence which tends to show, let alone alleges, that the defendants misperformed any duty owed to the plaintiff in the actual completion of the Form A-44 or administration of the breathalyzer tests, and that the alleged misperformance of such duties was the proximate cause of the violations claimed. On the contrary, the plaintiff's claims are based entirely upon the fact that the defendants allegedly lacked probable cause to arrest him, a determination which Connecticut Courts have consistently held involves the exercise of judgment and discretion.

The plaintiff claims that the defendants are not afforded governmental immunity with regard to the libel and defamation claims as they are subject to a ministerial duty pursuant to the FOIA fails for similar reasons. First, it bears note that the FOIA does not provide a private cause of action. See Pane v. Danbury, 267 Conn. 669, 680 (2004). Secondly, the FOIA does not abrogate governmental immunity. See Id., at 681. Finally, the plaintiff does not allege or proffer any evidence which tends to show that the defendants breached a duty owed to him in misperforming the disclosure of records under the FOIA.

Accordingly, there exists no genuine issue of material fact that the defendants were engaged in discretionary, governmental acts in exercising their judgment and discretion as to whether probable cause existed to arrest the plaintiff pursuant to Conn. Gen. Stat. §14-227a(a).  The defendants are therefore entitled to governmental immunity as to Counts Two, Three, Four, Six and Eight of the Complaint.

## VI. CONCLUSION

For the reasons stated in the defendants' Motion for Summary judgment and herein, the defendants respectfully request that summary judgment enter in their favor as to the plaintiff's Complaint in its entirety.

> DEFENDANTS,
> TOWN OF MIDDLETOWN, DAVID VISCONTI, in his official and individual capacity, DEREK PUORRO, in his individual capacity and MICHAEL KERKES, in his individual capacity
>
>
> By____/s/_Beatrice S. Jordan_____
>   Beatrice S. Jordan
>   ct22001
>   Howd & Ludorf, LLC
>   65 Wethersfield Avenue
>   Hartford, CT  06114
>   (860) 249-1361
>   (860) 249-7665 (Fax)
>   E-Mail:  bjordan@hl-law.com

**CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 8th day of August, 2005.

Rachel M. Baird, Esquire
Law Office of Rachel M. Baird
Stonegate Professional Building
379 Prospect Street
Torrington, CT  06790-5239

Trina Solecki, Esquire
City Attorney
City Hall
245 DeKoven Drive
P.O. Box 1300
Middletown, CT  06457

                                                                        /s/ Beatrice S. Jordan
                                                              Beatrice S. Jordan